OPINION OF THE COURT
Jasen, J.
The question presented by this appeal is whether, in response to a motion to quash a Grand Jury subpoena duces tecum on relevancy grounds, a prosecutor is obligated to come forth with a factual demonstration that the items sought by the subpoena have some relation to the subject matter of the Grand Jury’s investigation.
On July 10, 1980, petitioners were served with separate subpoenas duces tecum requiring them to appear before a Nassau County Grand Jury and produce certain books, records and documents pertaining to the Echo Adult Home of Laurel Hollow, New York. The Echo Adult Home is a private proprietary home for adults owned and operated by petitioners. According to the riders attached to these subpoenas, petitioners, in effect, were required to produce all the business records of the home for the period January 1, 1975 through June 30, 1980.[1]
*440 On August 18,1980, petitioners moved by order to show cause to quash the subpoenas on the ground that the materials sought were not relevant to the matter being investigated by the Grand Jury. Specifically, petitioners alleged that the Deputy Attorney-General had been investigating a complaint arising out of the death of a 92-year-old former resident of the home and that this incident did not justify a “sweeping investigation of the financial and operating conditions at the Echo Adult Home.” In addition, petitioners alleged that production of all the records requested by the subpoenas would make it impossible to operate the home.
In response to petitioners’ motion to quash the Grand Jury subpoenas duces tecum, a Special Assistant Attorney-General submitted a sworn statement in which she affirmed that the investigation of the Echo Adult Home was not precipitated by the death of the elderly resident. The Special Assistant, however, did not disclose the exact nature of the Grand Jury’s investigation. Rather, she alluded to a broader inquest into determining whether “crimes had been committed in the operation of the Echo Adult Home” and stated that the business records of the home were “clearly related to the subject of [that] inquiry.” Relying on the presumption of validity accorded to Grand Jury subpoenas, the Special Assistant asserted that it was petitioners’ burden to establish that the records were not relevant to the Grand Jury’s investigation, and that petitioners had failed to meet this burden. Finally, in answering petition- \ ers’ contention that delivery of all the subpoenaed evidence would impair the operation of the home, the Special Assistant stated that the Deputy Attorney-General’s office was willing to abide by whatever conditions the court would set in terms of retention of the business records of the home.
County Court granted petitioners’ application to quash the subpoenas, stating that “[s]ince the Deputy Attorney General did not deem it necessary to inform the court of the nature of his investigation, the question of relevancy must be determined in favor of petitioners.” While noting that *441 there need not be probable cause in order for a Grand Jury to conduct an investigation, County Court was of the view that “there must be some factual showing that the subpoenaed documents relate to some criminal activity” and that the “Special Prosecutor has totally failed to establish any such factual showing.”
On appeal, a unanimous Appellate Division affirmed. Although agreeing with the Deputy Attorney-General that he need not make public disclosure of the Grand Jury’s investigation, the court below held that he is “required, when challenged, to demonstrate relevancy to the court”. According to the Appellate Division, the Deputy Attorney-General “could have made an in camera disclosure of the subpoena’s relevancy to the investigation, and upon his failure to do so, the subpoena was properly quashed.”
This court granted leave to appeal in order to review the propriety of imposing an affirmative burden on a prosecutor to establish the relevancy of the materials sought by a Grand Jury subpoena when confronted by a motion to quash. We conclude that there should be a reversal.
At the outset, it should be noted that there is a fundamental distinction between a nonjudicial, “office” subpoena and a Grand Jury subpoena. An office subpoena is executed and the witness examined pursuant to it without direct judicial supervision. Furthermore, unlike a witness called before the Grand Jury, a party served with an office subpoena does not have the right to request to be taken immediately before a Judge for prompt resolution of any dispute concerning the scope and propriety of the examination being conducted. Indeed, in the absence of the more flexible contempt procedure available to a Grand Jury withess, a party served with an office subpoena, by seeking judicial resolution of the issues which may arise during questioning by the Deputy Attorney-General, runs the risk of criminal prosecution. (See Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, 231-232.)
Thus, an office subpoena is subject to challenge by a motion to quash on the grounds that the materials sought are irrelevant, and, when so challenged, it is incumbent *442 upon the issuer to come forward with a “factual basis” which establishes the relevancy of the items sought to the subject matter of the investigation before a witness will be compelled to comply with the subpoena’s mandate. (Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250; Matter of A’Hearn v Committee on Unlawful Practice of Law of N.Y. County Lawyers’ Assn., 23 NY2d 916, cert den 395 US 959; Matter of La Belle Creole Int. S.A. v Attorney-General of State of N.Y., 10 NY2d 192.) However, this requirement of subject matter identification is not very exacting. All that the issuer of an office subpoena need demonstrate in order to avoid a motion to quash is that the materials sought have “a reasonable relation to the subject matter under investigation and to the public purpose to be achieved.” (Carlisle v Bennett, 268 NY 212, 217; see, also, Matter of Goldin v Greenberg, 49 NY2d 566, 571-572; Matter of La Belle Creole Int. S.A. v Attorney-General of State of N.Y., supra, at p 196.)
In contrast, a Grand Jury subpoena duces tecum is governed by quite different principles. As was recently observed: “[The] obligation to come forth with evidence before the Grand Jury is not dependent upon a prospective witness or his attorney being informed of the scope of the investigation. * * * Certainly, the Governor is not required to broadcast publicly the purpose of the investigation in his executive order, nor is the special prosecutor required to inform a witness of the Grand Jury’s underlying purpose. As explained by then Judge Lehman when writing for this court in Matter ofSpector v Allen (281 NY 251, 257): ‘The grand jury must often conduct investigations to determine whether a crime has been committed, before it is possible for the District Attorney to formulate a charge or to point to any particular person. The successful prosecution of crime would be intolerably impeded if a District Attorney could be compelled to divulge, before he is ready, the nature of an investigation by the grand jury or the name of the person or persons suspected.’ Stated another way, ‘[t]he grand jury is an arm of the court. Its subpoenas are presumptively valid and can only be challenged by an affirmative showing of impropriety. * * * No witness may avoid obedience to the directions of the court *443 without establishing by concrete evidence that the subpoena was issued in bad faith or that it is for some other reason invalid.’” (Matter of Additional Jan. 1979 Grand Jury of Albany Supreme Ct. v Doe, 50 NY2d 14, 20, quoting Matter of Manning v Valente, 272 App Div 358, 361, affd 297 NY 681.)
The presumption of validity enjoyed by Grand Jury subpoenas is, in one sense, an aspect of the broader presumption of regularity applicable to all official acts of individuals functioning under an oath of office. (See Richardson, Evidence [10th ed], §72.) This presumption of validity, however, also stems from the very nature of the Grand Jury itself. The Grand Jury is an investigatory body with broad exploratory powers, the scope of which are “not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.” (Blair v United States, 250 US 273, 282; see Matter of Edge Ho Holding Corp., 256 NY 374, 381-382.)
As a practical matter, it must also be remembered that a Grand Jury is but a temporary body and the service of its members is of only limited duration. Constant delays occasioned by unmeritorious motions to quash followed by routine appeals can lead not only to the loss of evidence and the fading of witnesses’ memories, but also may completely frustrate the course of legitimate investigation into potentially criminal activity.[2] As noted by the Supreme Court, “[w]hen the grand jury is performing its investigatory function into a general problem area *** society’s interest is best served by a thorough and extensive investigation” (Wood v Georgia, 370 US 375, 392) and, absent some indication of abuse, “[a]ny holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the *444 public’s interest in the fair and expeditious administration of the criminal laws.” (United States v Dionisio, 410 US 1, 17.)
Furthermore, in the context of a Grand Jury investigation, relevancy is a concept not as easily susceptible to definition or delineation as in the area of evidence at trial. In large part, this is due to the manner in which a Grand Jury operates. As one court has observed: “[A] grand jury has no catalog of what books and papers exist and are involved in a situation with which it is attempting to deal, nor will it ordinarily have any basis for knowing what their character or contents immediately are. It can therefore hardly be expected to be able to designate or call for what its exact needs may ultimately turn out to be. * * * [I]t obviously has a right * * * to a fair margin of reach and material in seeking information, not merely direct but also as a matter of possible light on seemingly related aspects whose significance it is seeking to uncover.” (Schwimmer v United States, 232 F2d 855, 862, cert den 352 US 833.) Thus, insofar as Grand Jury subpoenas duces tecum are concerned, relevance is necessarily a term of broader import than when applied to evidence at trial.
In short, a Grand Jury subpoena duces tecum, unlike an office subpoena, enjoys a presumption of validity that requires the party challenging the subpoena to demonstrate, by concrete evidence, that the materials sought have no relation to the matter under investigation. Bare assertions of the lack of relevancy will not suffice. Rather, given the ranging, exploratory nature and operation of a Grand Jury, the witness served with a subpoena must show that “the documents are so unrelated to the subject of inquiry as to make it obvious that their production would be futile as an aid to the” Grand Jury’s investigation. (Matter of Manning v Vatente, 272 App Div 358, 361, supra.) Stated somewhat differently, before a witness is entitled to an order quashing a Grand Jury subpoena duces tecum, he must demonstrate “that a particular category of documents can have no conceivable relevance to any legitimate object of investigation by the * * * grand jury”. (Matter of Horowitz, 482 F2d 72, 80; accord Matter of Pantojas, 628 F2d 701; Matter of Liberatore, 574 F2d 78; cf. *445 United, States v Mara, 410 US 19; but see Matter of Grand Jury Proceedings [Schofield], 486 F2d 85.)
Admittedly, this presumption of validity imposes a difficult burden of proof on one seeking to quash a Grand Jury subpoena duces tecum on relevancy grounds. Nevertheless, because a Grand Jury’s task is to inquire into the possible existence of criminal conduct, its investigatory powers are necessarily broad; it should not be hindered in its quest by witnesses who continually litigate the threshold validity of its subpoenas. There has been no showing here, or generally, that there has been such a pattern of abuse regarding Grand Jury subpoenas as would warrant an abrogation of the traditional presumption of validity in favor of a rule that would require a prosecutor, whenever challenged, to demonstrate relevancy to the court in the first instance.
Of course, to be distinguished from motions to quash are those situations in which a prosecutor seeks to hold a recalcitrant witness before the Grand Jury in contempt. “It has long been the rule in New York that ‘there can be no punishment for contempt for *** [refusing to testify before the Grand Jury] unless the court is shown that the evidence demanded may be relevant and proper’ ”. (Matter of Koota v Colombo, 17 NY2d 147, 150, cert den 384 US 1001, quoting Matter of Spector v Allen, 281 NY 251, 258, supra.) In these instances, reliance by the prosecutor solely on the presumption of validity will not suffice. Although not obligated to conclusively establish relevancy, the prosecutor must at least come forth with a factual showing of the “nature of the evidence demanded and its relation to the subject of the investigation” sufficient to enable the court to make an “intelligent estimate” of relevancy before a witness may be punished for contempt. (Matter of Spector v Allen, supra, at p 258.)
In this case, petitioners failed to overcome the presumption that the Grand Jury subpoenas served upon them were valid. In this regard, they offered no proof that the materials sought were unrelated to a legitimate objective of the Grand Jury’s investigation into crimes committed in the operation of the Echo Adult Home. Rather, petitioners merely speculated as to what, in their view, was the Grand Jury’s purpose in seeking the business records of the home. *446 This allegation, without more, was insufficient to overcome the presumption that the materials sought were relevant to the Grand Jury’s investigation and, therefore, the subpoenas should not have been quashed.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the motion to quash the subpoenas denied.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.

. Among the items petitioners were ordered to produce were: the partnership agreement; books of account and original entry; all contracts between the home and any suppliers; accountant’s workpapers; annual financial statements filed with the Department of Social Services; payroll records; personnel files; bank and loan records; all tax *440 returns; resident listings; daily census records; resident folders and ledger sheets; personnel allowance ledger and summary book; inventory of resident property; and all accident and incident reports.

. The delays occasioned by the refusal of recalcitrant witnesses to comply with Grand Jury subpoenas are a very real concern. For example, the Deputy Attorney-General has informed us that the 1978 subpoenas which this court upheld in Matter of Landau v Hynes (49 NY2d 128) are yet to be complied with. Another vivid example of the type of dilatory tactics engaged in by witnesses refusing to comply with Grand Jury subpoenas may be found in Matter of McGinley v Hynes (51 NY2d 1Í6, cert den 450 US 918). Unfortunately, these are not merely isolated instances of such delays.