OPINION OF THE COURT
Norman S. Felig, J.
Following his arraignment in Criminal Court on August 4, 1987 on charges of having kidnapped 12-year-old Jennifer Schweiger, who mysteriously disappeared from the vicinity of her Staten Island home on July 9, 1987, the defendant herein, *1035 Andre Rand, was committed to the psychiatric ward of Kings County Hospital for an examination to determine his competence to stand trial (CPL art 730). As has become all too familiar, Jennifer Schweiger’s body was discovered on August 12, 1987, in a shallow grave approximately 150 yards from the location of a campsite on the grounds of the Staten Island Developmental Center at Willowbrook which was allegedly used by Andre Rand. Subsequently, and on August 16, 1987 a reporter from the Daily News, Heidi Evans, was able to gain access to the defendant by posing as a friend, and thereafter proceeded to interview him in a visitors’ room at Kings County Hospital for approximately one hour. The resulting article, which contains several quotes from Rand, appeared in the Daily News on August 17, 1987.
In light of these developments, and as part of a Grand Jury investigation into the death of Jennifer Schweiger, a subpoena duces tecum was served upon Ms. Evans on August 20, 1987 demanding that she appear before the Grand Jury as a witness in connection with the proceedings concerning Andre Rand, and that she bring with her "all notes and memoranda pertaining to the interview with Andre Rand.” The Daily News and Ms. Evans subsequently moved to quash this subpoena, contending that the materials and the information sought were protected from disclosure by the "qualified privilege” accorded to newspersons under the "free speech, free press” guarantees of the First Amendment of the US Constitution and NY Constitution, article I, § 8. In addition, petitioners maintain, inter alia, that compelling the disclosure of information obtained by a reporter in the course of news gathering will have a "chilling effect” upon his or her ability to function as a reporter and, therefore, upon the free flow of information to the general public.
The motion is denied.
In requesting that this court quash the Grand Jury subpoena duces tecum, the petitioners have wisely eschewed reliance upon the "absolute privilege” accorded to reporters by New York’s Shield Law (Civil Rights Law § 79-h), as it is well established that in order for the foregoing to apply, the information in question must have been imparted to the newsperson under a cloak of confidentiality, i.e., upon an understanding, express or implied, that either the information or its sources, or both, would not be revealed (Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151; People *1036 v Korkala, 99 AD2d 161). Clearly, no such showing is possible here.
Turning to the claimed "qualified privilege” allegedly derived from the First Amendment of the US Constitution and NY Constitution, article I, § 8, we find that the confidentiality requirements of, e.g., the New York Shield Law are wholly inapplicable, and that the cases discussing the "qualified privilege” have permitted its invocation in otherwise proper circumstances notwithstanding the absence of a claim of confidentiality (see, e.g., People v Korkala, 99 AD2d 161, supra). Although the precise contours of this constitutional privilege have yet to be fully defined, especially in the context of Grand Jury proceedings, it is clear from the concurring opinion of Mr. Justice Powell in Branzburg v Hayes (408 US 665, 710) that in adjudicating a claim of the constitutional privilege against compelled disclosure there must be a balance struck between the "freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct”, and that the proper balancing of these "vital constitutional and societal interests” can best be achieved on a case-by-case basis (Branzburg v Hayes, supra, at 710).
While Branzburg (supra) itself dealt specifically with the question of the scope of the "qualified privilege” in the context of a pending Grand Jury proceeding, later cases which have discussed and elaborated upon the principle have done so in a variety of factual circumstances, including both civil and criminal matters (see, e.g., United States v Burke, 700 F2d 70, cert denied 454 US 816; Gulliver’s Periodicals v Levy Circulating Co., 455 F Supp 1197). From these and other cases, there evolved a three-pronged balancing test which, while it has been variously phrased, has nearly always contained the same three elements, (1) a showing that the information requested is "highly relevant” to the matter in issue; (2) that it is "necessary” to the position of the party requesting it; and (3) that it is not obtainable from any alternate source (see, e.g., People v Korkala, 99 AD2d 161, 167, supra; United States v Burke, supra, at 76-77). As applied in New York, however, at least in the context of a pending Grand Jury investigation, it would appear that the so-called three-pronged test must also be reconciled with the presumption of validity which has traditionally been accorded to Grand Jury subpoenas in this State (see, Virag v Hynes, 54 NY2d 437, 444).
Thus, the Third Department in Matter of Knight-Ridder Broadcasting v Greenberg (119 AD2d 68, 72) rejected the *1037 petitioner’s claimed First Amendment privilege against compelled disclosure in the form of a Grand Jury subpoena by observing that "[w]hatever qualified privilege may exist under the 1st Amendment with regard to the material sought does not protect such material here, since the taped interview [with a murder suspect] presumably contains relevant information * * * which ostensibly is necessary to the Grand Jury investigation and unavailable from other sources” (emphasis supplied). Particularly crucial to the matter under review is the fact that the foregoing decision was just recently affirmed by the Court of Appeals in virtually the identical language "In regard to the constitutional claims raised by Knight-Ridder, we agree with the Appellate Division that whatever qualified privilege may exist under the First Amendment to the United States Constitution does not protect the material sought here since the taped interview presumably contains relevant information necessary to the Grand Jury investigation and unavailable from other sources (see, Branzburg v Hayes, 408 US 665, 710; People v Korkala, 99 AD2d 161, 166-186, supra)” (Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151, 160, supra; emphasis supplied). Significantly, all that the Court of Appeals omitted was the word "ostensibly”. In addition, although the issue was not reached by the Court of Appeals in Matter of Knight-Ridder v Greenberg (supra), it is the opinion of this court that to whatever extent a qualified privilege may ultimately be recognized under NY Constitution, article I, § 8, it should be subjected to a similar three-pronged balancing test, especially where, as here, the petitioner is seeking to quash a Grand Jury subpoena duces tecum (cf., Virag v Hynes, supra).
Applying the foregoing principles to the facts at bar, it would appear that significant portions of the defendant’s disclosures to Ms. Evans have already been made public in the article which appeared under her by-line in the Daily News on August 17, 1987, and that the so-called "qualified privilege” cannot be invoked as to statements which have already been published (see, Matter of Pennzoil Co., 108 AD2d 666, 667). In addition, since he is the last individual known to have seen Jennifer Schweiger alive, any additional statements which the defendant may have made to Ms. Evans during the course of the interview (which took place shortly after the body was discovered) would, in the language of the Court of Appeals, "presumably contain * * * relevant information necessary to the [pending] Grand Jury investigation” (Matter of Knight- *1038 Ridder Broadcasting v Greenberg, 70 NY2d 151, 160, supra; see, Virag v Hynes, supra, at 444; cf., People v Korkala, 99 AD2d 161, supra).
As for the question of the unavailability of alternate sources, it would appear that the foregoing should not be "presumed” from a silent record (see, Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151, 160, supra), but that, at least in the context of a Grand Jury subpoena, the burden of proof imposed on the prosecution should not be inordinately "heavy” (see, Branzburg v Hayes, 408 US 665, 710, supra). Accordingly, and notwithstanding the fact that the interview was allegedly conducted in a semipublic visiting room at Kings County Hospital in normal conversational tones, the court now has before it an affidavit from the correction officer who was on duty and present in the visitors’ room at the time of the interview and who has stated unequivocally that Ms. Evans at no time identified herself as a reporter, that the officer was simultaneously supervising at least three other visitors with inmates and that Mr. Rand was speaking "in a low voice” and was wholly inaudible. In addition, it appears from this affidavit that the other visitors and inmates who were present in the room were engaged in conversations of their own and were even further away from Rand than the officer. In the court’s opinion, this constitutes a sufficient showing that the desired information is not available from any other source (see, Matter of Knight-Ridder Broadcasting v Greenberg, supra).
Under these circumstances, whatever qualified privilege may be said to exist under the First Amendment of the US Constitution and NY Constitution, article I, § 8 cannot operate to protect the material sought from disclosure, and the motion to quash the subpoena must therefore be denied (see, Matter of Knight-Ridder Broadcasting v Greenberg, supra; People v Korkala, supra; see also, Virag v Hynes, 54 NY2d 437, supra). Manifestly, this is not a case in which an indictment has already been obtained and where the sole or dominant purpose for the issuance of the Grand Jury subpoena is to aid in the preparation of the case for trial (see, Matter of Hynes v Lerner, 44 NY2d 329, 333).