OPINION OF THE COURT
Robert G. Seewald, J.
Can a prosecutor properly issue, sua sponte, a Grand Jury subpoena duces tecum, requiring the recipient to produce the demanded records to the Grand Jury, on pain of criminal *60 contempt of court, when in fact no Grand Jury proceeding exists?
The Office of the Deputy Attorney-General for Medicaid Fraud Control (hereinafter referred to as the Attorney-General) asserts that a Grand Jury subpoena duces tecum may be issued to gather evidence for a potential prosecution in the absence of a Grand Jury proceeding.
The court disagrees and concludes that such subpoenas are null and void.
The Attorney-General issued and served a Grand Jury subpoena duces tecum upon the respondent Bhupendra Patel, M.D. (hereinafter referred to as Patel), on April 29, 1988, commanding him to produce all his Medicaid patient records from January 1984 through April 29, 1988. Returnable before the Grand Jury six days later, the subpoena called for Patel to "appear before the Grand Jury of the County of Bronx at the Grand Jury room, located on the 4th floor at 215 East 161st Street * * * at 9:30 o’clock * * * as a witness in a criminal prosecution entitled The People of the State of New York against B. B. Doe”.
The subpoena warned that "a failure to attend shall be DEEMED A CRIMINAL CONTEMPT OF COURT, PUNISHABLE UNDER THE JUDICIARY AND PENAL LAWS OF THE STATE OF NEW YORK.”
Recognizing the sanctity of a Grand Jury subpoena and the drastic consequences of disobedience, Patel’s counsel contacted the Special Assistant Attorney-General (hereinafter referred to as the special assistant or the prosecutor) responsible for investigation and prosecution of the matter. Counsel expressed his client’s willingness to comply, but since the subpoena commanded the production of voluminous records in a mere six days, he requested additional time for compliance. The special assistant rejected the request and commenced a proceeding to find Patel in criminal contempt of court.
Having no reason to suspect the validity of the Grand Jury subpoena, Patel defended himself on the sole ground that it was physically impossible to produce the thousands of records sought by the Grand Jury within the allotted six days.
The court found Patel not guilty of criminal contempt, then directed him to deliver the records to the prosecutor on behalf of the Grand Jury on a reasonable, regularly scheduled basis set by the court and directed the prosecutor to return them on a schedule as well (see, In re Kuriansky [Patel], NYLJ, Sept. 20, 1988, at 19, col 2).
*61 Two months later the special assistant brought a second criminal contempt proceeding, alleging that Patel had not produced all the records demanded by the Grand Jury. Following extensive testimony the court again declined to find Patel guilty of criminal contempt, concluding that the prosecution had failed to prove beyond a reasonable doubt that Patel willfully and contumaciously disobeyed the Grand Jury subpoena and the August 15th court order.
The parties appeared again on December 1, 1988, this time at the request of Patel’s counsel. He complained that the special assistant was not returning the original records as required. The special assistant conceded this, but asserted that he had compelling reasons for the refusal, which he offered to disclose in camera.
In the course of his in camera presentation, on a sealed record (relevant portions of which are hereby released to counsel for appellate purposes), the prosecutor parenthetically made certain observations which led a startled court to suspect that as of that very date (Dec. 1, 1988) no Grand Jury had ever been convened to hear any alleged wrongdoing by Patel. The court pursued the question; the special assistant reported that at some time in the future the matter might be presented to a Grand Jury.
The issue was then articulated in open court and input was requested from both sides.
The court has fully considered the arguments of respective counsel, as well as relevant legal principles, in concluding that a prosecutor may not, sua sponte, properly issue a Grand Jury subpoena without first placing the matter before a Grand Jury. A Grand Jury action or proceeding must be in process.
The Grand Jury, after all, serves as an arm of the court, not of the prosecutor (see, CPL 190.05; Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 190.05, at 185).
The Grand Jury’s subpoenas are issued by and for that entity which was impaneled by the superior court. They are issued either by the Grand Jury itself or by its legal adviser, the prosecutor, on behalf of the Grand Jury.
The language of the Criminal Procedure Law is significant in setting the classification of Grand Jury witnesses.
"The people may call as a witness in a grand jury proceeding any person believed by [it] to possess relevant information or knowledge” (CPL 190.50 [2] [emphasis added]).
*62 "The grand jury may cause to be called * * * any person believed by it to possess relevant information or knowledge” (CPL 190.50 [3] [emphasis added]).
"Although not called as a witness by the people or at the instance of the grand jury, a person has a right to be a witness in a grand jury proceeding under circumstances prescribed in this subdivision” (CPL 190.50 [5] [emphasis added]).
"A witness who gives evidence in a grand jury proceeding receives immunity unless * * *
"(c) The evidence given by the witness consists only of books, papers, records or other physical evidence of an enterprise * * * the production of which is required by a subpoena duces tecum” (CPL 190.40 [2] [emphasis added]).
The Attorney-General, meanwhile, has been specifically authorized by law to serve an office subpoena (Executive Law § 63 [8]; see also, Matter of Hynes v Moskowitz, 44 NY2d 383, 391). The Attorney-General may serve this subpoena and require the recipient to appear before him, produce records and answer questions under oath. It is well known that this weapon is not part of a District Attorney’s arsenal. That prosecutor cannot use subpoenas to compel witnesses to appear anywhere except at a Grand Jury or at a court where an action or proceeding is in process (CPL 610.20; People v Boulet, 88 Misc 2d 353, 354; People v Hamlin, 58 AD2d 631, 632; People v Arocho, 85 Misc 2d 116; Drake v City of Rochester, 96 Misc 2d 86, 99, affd 74 AD2d 996).
Fundamental distinctions exist between an office subpoena issued by the Attorney-General pursuant to the Executive Law and a Grand Jury subpoena (see, Virag v Hynes, 54 NY2d 437).
The Court of Appeals has observed that "an office subpoena is subject to challenge by a motion to quash on the grounds that the materials sought are irrelevant, and, when so challenged, it is incumbent upon the [Attorney-General] to come forward with a 'factual basis’ which establishes the relevancy of the items sought to the subject matter of the investigation before a witness will be compelled to comply with the subpoena’s mandate” (Virag v Hynes, supra, at 441-442).
A Grand Jury subpoena, in sharp contrast, is presumptively valid and can be quashed only when the recipient proves that the materials subpoenaed "have no relation to the matter under investigation” (Virag v Hynes, supra, at 444), or when an affirmative act of impropriety or bad faith is demonstrated *63 (Virag v Hynes, supra, at 442, citing Matter of Spector v Allen, 281 NY 251, 257).
The party seeking to quash a Grand Jury subpoena duces tecum must demonstrate that a particular category of documents can have no conceivable relevance to any legitimate object of investigation by the Grand Jury (see, Matter of Grand Jury Subpoenas, 72 NY2d 307, 317, citing Virag v Hynes, supra, at 444).
Thus, the recipient of a Grand Jury subpoena faces a monumental task in seeking to quash.
Additionally, failure to comply with a Grand Jury subpoena subjects the recipient swiftly and summarily to a finding of criminal contempt. In hindsight, the respondent in this matter could not have been in contempt of court, since the Grand Jury’s will was not being thwarted and since the prosecutor is not an arm of the court. It is fortunate, therefore, that twice the court declined to find the respondent guilty of contempt of court, albeit for other reasons.
The failure to comply with an Attorney-General’s office subpoena cannot give rise to the contempt sanction. By its own terms, the office subpoena is not a court mandate, although the Executive Law classifies failure to comply as a misdemeanor (see, Executive Law § 63 [8]).
By issuing a Grand Jury subpoena when no proceeding was pending before a Grand Jury, the Attorney-General has obliterated the distinction between a Grand Jury subpoena and an office subpoena. He has issued an office subpoena and cloaked it with the majesty of a Grand Jury subpoena. He may not do this.
Naturally, the Attorney-General would prefer to proceed by Grand Jury subpoena. But he may not unilaterally convert an office subpoena into a Grand Jury subpoena merely by denoting it as such and making it returnable at the door of a Grand Jury when the Grand Jury has not joined the fray, when, in effect, the Grand Jury door secures and obscures an empty room.
By insisting that the Attorney-General initiate a Grand Jury proceeding before invoking the authority of that august body and before instituting criminal contempt proceedings based upon the recipient’s allegedly willful and contumacious refusal to comply with the directive of the Grand Jury, the court is not merely exalting form over substance.
The authority of the Attorney-General to investigate sus *64 pected causes of Medicaid fraud is not at issue (see, cf., Matter of Landau v Hynes, 49 NY2d 128; Matter of Moe v Kuriansky, 120 AD2d 594). Nor is the court either interfering with or preventing such investigations, which are important and necessary. Nor does the court question the right of the Attorney-General to independently examine and retain records subpoenaed by a Grand Jury (see, CPL 610.25 [1]).
But the Attorney-General clearly cannot arrogate to himself the powers and authority of the Grand Jury.
The cases cited by the Attorney-General in his letter to the court (dated Dec. 12, 1988) do not require a contrary result. In Matter of Heisler v Hynes (42 NY2d 250, supra), the Court of Appeals held that a Grand Jury subpoena duces tecum may not be used to compel a witness to surrender possession of records to a prosecutor for independent examination outside the presence of the Grand Jury.
The Legislature acted quickly to amend CPL 610.25 (1) to read as follows: "Where a subpoena duces tecum is issued on reasonable notice to the person subpoenaed, the court or grand jury shall have the right to possession of the subpoenaed evidence. Such evidence may be retained by the court, grand jury or district attorney on behalf of the grand jury” (emphasis added).
Then in Matter of Brunswick Hosp. Center v Hynes (52 NY2d 333), the Court of Appeals held that a prosecutor who obtains evidence by a subpoena duces tecum issued, on behalf of a Grand Jury, has a right to possess and retain the subpoenaed material without first obtaining a court order, citing CPL 610.25 (1) as amended.
If a prosecutor may independently acquire evidence by issuing a Grand Jury subpoena without any Grand Jury involvement, the Legislature could simply have stated this when it amended CPL 610.25 (1) in response to the Heisler decision. Instead, the Legislature expressly provided that the subpoenaed evidence "may be retained by the * * * district attorney on behalf on the grand jury” (emphasis added).
Nevertheless, the special assistant calls this court’s attention to footnote No. 2 in the Brunswick Hosp. case (52 NY2d, supra, at 339), which reads as follows: "2. It should be noted that CPL 610.20, which authorizes the issuance of a Grand Jury subpoena, nowhere requires the subpoena be for a particular Grand Jury. Thus, it might well be that the validity of a subpoena does not depend upon the existence of a particular *65 Grand Jury at any specific time (cf. United States v Kleen Laundry & Cleaners, 381 F Supp 519, 522-533).”
If the special assistant claims that this footnote can be construed to sanction his practice of serving Grand Jury subpoenas without ever having to place the matter before a Grand Jury, the court does not agree. Examination of the Federal District Court case cited by our Court of Appeals in footnote No. 2 (United States v Kleen Laundry & Cleaners, supra, at 523) makes this very clear: "That a different grand jury from the one which subpoenas the evidence is presented with that evidence is of little import * * *. By a parity of reasoning, the absence of a sitting grand jury at the time of issuance is not disturbing since the return date was set for a day when the jurors were normally in session.”
The situation at bar is clearly distinguishable from that presented in Kleen Laundry (supra), where the Federal Grand Jury was expected to be sitting on the return date, although it was not sitting on the day the subpoena was issued. There the court observed that the practice apparently was for the custodian of the papers to deliver them to the foreman of the Grand Jury while the jury was in session. If analysis was required, those papers would be turned over to the prosecutor, later to be presented as evidence to the Grand Jury.
Here, on the other hand, no Grand Jury was ever sitting, either on the date the subpoena was served in the name of the Grand Jury, or on its return date. Indeed, as noted earlier, no Grand Jury was ever in existence to hear evidence against Patel. Thus, the special assistant’s reliance on Kleen Laundry (supra) is clearly misplaced. While there are always Grand Juries in existence, this does not mean that a particular matter is in process before a Grand Jury, even if the Grand Jury in existence is hearing other cases brought by the Attorney-General.
Examination of CPL 610.20 (2) further puts to rest the special assistant’s theory: "A district attorney, or other prosecutor where appropriate, as an officer of a criminal court in which he is conducting the prosecution of a criminal action or proceeding, may issue a subpoena of such court, subscribed by himself, for the attendance in such court or a grand jury thereof of any witness whom the people are entitled to call in such action or proceeding” (emphasis added). This statute makes explicit the requirement that there be a Grand Jury in existence referable to the specific case under investigation.
*66 It is therefore clear in the instant matter that the Attorney-General unilaterally, and without authority, converted an office subpoena into a Grand Jury subpoena.
The special assistant claims that this procedure is one his office regularly follows. That this procedure is well intentioned. That it prevents the willy-nilly presentation of cases to Grand Juries without full and proper investigation and evaluation. That it prevents wholesale withdrawals and re-presentations. That it protects the reputations of targets who may never be indicted.
The special assistant asserts that in an attempt to cope with the practical problems faced by his office, cases like this one are not presented to Grand Juries at the subpoena stage. The court recognizes that the Attorney-General’s matters are often lengthy, complicated presentations involving a great deal of documentary evidence. Often the investigation lasts more than a year. Therefore, as the special assistant points out, instead of pulling cases in and out of Grand Juries or keeping these panels in operation for more than a year at a time, the Attorney-General refrains from presenting the case while issuing Grand Jury subpoenas and examining and considering the evidence.
But another, authorized alternative is available, specifically designed for such situations: the office subpoena. By utilizing the power to issue an office subpoena, he need not involve prematurely and tie up the Grand Jury. He need not withdraw matters and re-present matters (though he may, of course, with court authorization).
Finally, the special assistant points with pride to his office’s concern with the reputation of targets who may eventually not be indicted or charged. He concludes that these matters ought not to be placed before Grand Juries where reputations might be besmirched. This concern is most commendable. But it is axiomatic that Grand Jury proceedings are secret, sacrosanct, so jealously guarded that improper disclosure is a crime. Presumably the Attorney-General would retain his laudable regard for reputations during the pendency of Grand Jury proceedings. Presumably he would retain his laudable regard for reputations following the issuance of office subpoenas as well.
In order to gain the desired simplicity and convenience of the office subpoena, the Attorney-General must forego the dual advantages of the presumption of validity of the Grand *67 Jury subpoena and the possibility of a recalcitrant party being found in criminal contempt of court.
If he chooses to invoke the power and authority of the Grand Jury, he must abide by the procedures and accept court supervision.
If he chooses to exempt his office from the procedures and supervision, he may issue the still substantial office subpoena in the pursuit of his important duties. But he may not issue an office subpoena masquerading as a Grand Jury subpoena.
Accordingly, the Attorney-General is directed to return to Patel within 10 days of receipt of a copy of this decision and order all records which were acquired pursuant to the null and void subpoena of April 28, 1988.