OPINION OF THE COURT
Judith J. Gische, J.
Petitioner, Richard J. Condon, is the Special Commissioner of Investigation for the New York City School District (SCI). On or about September 10, 2007, the SCI served two separate subpoenas duces tecum respectively on the custodian of records for the Inter-Religious Foundation for Community Organization, Inc. (IFCO) and Reverend Lucius Walker, Jr. Reverend Walker is the founder and executive director of IFCO (collectively respondents).
The SCI has brought two separate petitions, pursuant to CPLR 2308, compelling compliance with such subpoenas. IFCO and Reverend Walker are jointly represented. Based upon substantially identical submissions and arguments, they each move to quash the subpoena directed toward them and dismiss the respective petitions. Since both petitions and the cross motions raise substantially identical issues, they are consolidated for determination in this single decision and order.
The facts pertinent to the petitions and cross motions are largely not in dispute. The Department of Investigation was established by the New York City Charter to investigate matters of concern to the city and its inhabitants. (General City Law § 20 [21]; New York City Charter ch 34.) In 1990, the Mayor of the City of New York issued Executive Order No. 11, which required that a Deputy Commissioner of Investigation, independent of the Board of Education (BOE), be appointed to investigate corruption, conflicts of interest, unethical conduct and other misconduct within the New York City School District. The title was changed to Special Commissioner of Investigation for the New York School District by Executive Order No. 34 of the Mayor of the City of New York in 1992, and Commissioner Con-don is currently that Special Commissioner.
In April 2007 it came to Commissioner Condon’s attention that BOE employees at the Beacon School in Manhattan were *876 escorting groups of students on trips to Cuba that may have been in violation of federal laws restricting such travel. There is no dispute that Beacon, its employees and students operate within the auspices of the New York City School District. Commissioner Condon’s office initially learned about these events through an article that appeared in the New York Post on April 16, 2007 and from a BOB employee who was asked by a reporter about a “tip” that five Beacon students and their teacher had been detained at the United States border during a recent spring break vacation. There is also information that BOE’s permission for the last trip had been requested, but denied.
As a result of this preliminary information, Commissioner Condon initiated an investigation into these allegations. According to Commissioner Condon, the investigation is to determine, inter alia, whether any travel to Cuba was planned, arranged and taken by BOB employees and students of Beacon and whether any BOB employees committed “misconduct” in the planning, authorizing, facilitating or taking of such travel. Included within the investigation is whether BOB employees effectively informed the students, their parents or guardians, and BOB administrators of the federal government’s restrictions concerning travel to Cuba. According to petitioner, and not disputed by respondents, the evidence developed thus far indicates that there have been at least four trips to Cuba by faculty and students of Beacon since 1999 and that some, if not all, of the trips were in violation of federal law. Commissioner Con-don also claims that there is evidence that IFCO was involved in arranging some of these trips.
Respondents neither confirm nor deny IFCO’s involvement in arranging these trips to Cuba. IFCO describes itself as the umbrella organization for Pastors for Peace, with a stated mission of defending the human rights of victims in Central America and the Caribbean. IFCO opposes the embargo against Cuba and “ advocate[s] people to people contact for people of the United States anxious to understand why our government insists on punishing our brothers and sisters in Cuba in defiance of God’s law and international law.”
As a consequence of its findings thus far, petitioner issued the subject subpoenas in furtherance of the investigation. Neither IFCO nor Reverend Walker are the target of the subpoenas. The subpoenas provide in relevant part that the following documents be produced:
“Any and all records pertaining to travel to Cuba by *877 students, staff and faculty of The Beacon School for the period of January 1, 2003 to the date of the subpoena. The records demanded include but are not limited to:
“1. Applications, including any supporting documentation;
“2. Permission slips;
“3. Itineraries, including arrangements related to transportation, lodging and food;
“4. Payments and/or contributions received from the students, faculty, staff and/or school; and “5. Payments made on behalf of the students, faculty, staff and/or school, including for, but not limited to, transportation, lodging and food.”
Discussion
An agency of the government may conduct an inquiry into the affairs of those within its jurisdiction if it can establish: (1) its authority for engaging in an investigation and issuing the subpoenas, (2) that the evidence sought is reasonably related to the subject matter of the inquiry, and (3) that there is an authentic factual basis to warrant the particular investigation. (Matter of Levin v Murawski, 59 NY2d 35 [1983].) IFCO and Reverend Walker raise legal objections that they believe not only justify their failure to comply with the subpoenas, but warrant quashing them and dismissing the petitions. They argue that the subpoenas: (1) are facially deficient, (2) exceed Commissioner Condon’s authority to act, and (3) violate the 1st, 4th and 5th Amendments of the United States Constitution.
A. Facial Sufficiency of the Subpoenas
Respondents claim that the subpoenas are facially defective because they fail to contain a sufficiently particularized statement describing the nature of the investigation. They further argue that to the extent that Commissioner Condon has “cured” the defects by providing additional information in these pétitions, the court should nonetheless quash them as a matter of public policy. The court rejects both of these legal propositions.
An investigative subpoena issued by an administrative agency is generally referred to as an office subpoena. (See Virag v Hynes, 54 NY2d 437 [1981].) Such subpoenas may be challenged by a motion to quash. Case law is clear that only after the motion is made must the issuer then come forward with a factual basis to establish the relevancy of the materials sought before the wit *878 ness will be compelled to comply with the subpoenas. (Virag v Hynes, supra; Matter of A’Hearn v Committee on Unlawful Practice of Law of N.Y. County Lawyers’ Assn., 23 NY2d 916 [1969].) All the issuer must then show is that the materials sought have a reasonable relation to the subject matter under investigation and to the public purpose to be achieved. (Matter of N. v Novello, 13 AD3d 631 [2d Dept 2004].)
Contrary to respondents’ arguments, there is no statutory and/or common-law precedent which requires that the burden must be satisfied by only looking to the face of the subpoena or prior to the making of a motion to quash. In this regard, Harlem Teams for Self-Help v Department of Investigation of City of N.Y. (122 Misc 2d 1066 [Sup Ct, NY County 1984]), relied upon by respondents, does not hold to the contrary. In Harlem, the court was not reviewing the challenged subpoenas for facial sufficiency; it was reviewing whether the agency had made the requisite showing of materiality and relevancy sufficient to support the subpoena at all. In making such evaluation, the court looked at the facial sufficiency of the subpoenas as well as the affidavit of the Commissioner submitted on the motion to quash. The court did not develop any standard by which to evaluate the facial sufficiency of office subpoenas.
Nor is the court persuaded by respondents’ arguments that the actual subpoenas are overbroad. They are limited to specific events and time periods relevant to travel to Cuba by Beacon students chaperoned by Beacon employees. Even were the subpoenas somehow facially improper, the remedy is not to quash, but to limit their scope to permissible parameters. (New York State Commn. on Govt. Integrity v Congel, 142 Misc 2d 9 [Sup Ct, NY County 1988], affd as mod 156 AD2d 274 [1st Dept 1989], appeal dismissed 75 NY2d 836 [1990].)
B. Commissioner Condon’s Scope of Authority
Respondents make two categories of arguments that the subpoenas issued exceed Commissioner Condon’s authority to act. First, they argue that matters of travel to Cuba are exclusively within the domain of the federal government. Second, they argue that the matters being investigated are beyond the jurisdictional authority conferred by Executive Order No. 11.
Respondents argue that foreign relations, and specifically foreign policy with respect to Cuba, is exclusively within the domain of the federal government. In so arguing, they rely upon the Supremacy Clause of the United States Constitution and *879 federal laws and regulations imposing a trade embargo with Cuba. They collaterally argue that SCI’s investigation will interfere with a pending federal proceeding.
The Supremacy Clause of the United States Constitution provides that the federal laws are the supreme law of the land and that the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding. (US Const, art VI, cl 2.) The Constitution, federal law, and all treaties made under the authority of the United States “shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” (US Const, art VI, cl 2.) The Supremacy Clause requires that the states’ police power is superseded by federal law where it is “the clear and manifest purpose of Congress” to do so. (Cipollone v Liggett Group, Inc., 505 US 504, 516 [1992], quoting Rice v Santa Fe Elevator Corp., 331 US 218, 230 [1947].) The purpose of Congress is the ultimate touchstone of every preemptive analysis. (Medtronic, Inc. v Lohr, 518 US 470, 485 [1996], citing Retail Clerks v Schermerhorn, 375 US 96, 103 [1963]; see also Drattel v Toyota Motor Corp., 92 NY2d 35, 42 [1998].) The Supremacy Clause thereby prevents the enactment and/or enforcement of any state or local law which is in conflict with a federal law. Therefore, a state or local investigative body cannot issue subpoenas to investigate an area of law that is otherwise federally preempted. (Matter of Office of Attorney Gen. of State of N.Y., 269 AD2d 1 [1st Dept 2000].)
Foreign policy is an area of law that is exclusively reserved for the federal government. Thus, neither the state nor any other local government can make laws or regulations regarding foreign policy that otherwise impinge on the federal government’s right to do so. (Matter of New York Times Co. v City of N.Y. Commn. on Human Rights, 41 NY2d 345 [1977].) Congruently, they cannot directly investigate whether federal laws pertaining to foreign travel are being violated. (Matter of Office of Attorney Gen. of State of N.Y., supra.)
The SCI, therefore, cannot investigate whether federal laws restricting travel to Cuba have been violated simply so it can mete out an independent punishment for the violation of such federal laws. This is not, however, the object of the SCI investigation. While an inquiry into whether federal laws restricting travel to Cuba have been violated is certainly the starting point of SCI’s investigation, its primary focus is to *880 determine whether those violations bear upon the responsibilities of BOE employees to supervise school-age children entrusted to their care, while on educational trips organized through the auspices of their school. In this respect the SCI investigation does not formulate any foreign policy or seek to enforce a foreign policy independent of that of the United States. Its effect on federal concerns is at most incidental and/or tangential. (Zschernig v Miller, 389 US 429 [1968].)
Nor does the SCI investigation interfere with any pending federal proceeding or the rights of the federal government to investigate issues specifically related to unauthorized travel to Cuba. Respondents have provided to the court an undated letter from the United States Treasury Department’s Office of Foreign Assets Control (OFAC) requesting the production of documents related to whether IFCO organized and/or arranged trips of Beacon students to Cuba in March 2007 and on five previous occasions. Respondents argue that because the information sought by the SCI is virtually identical to that being sought by OFAC, compliance with the subpoenas will interfere with the pending federal investigation. The scope and breadth of OFAC’s inquiry is unclear at this juncture. To the extent that there is any overlap, however, Executive Order No. 11 expressly provides that the SCI “shall make available to appropriate law enforcement officials information and evidence which relate to criminal acts that he or she may obtain in carrying out his or her duties.” Thus, there is no reason to subordinate the SCI’s investigation to OFAC’s letter inquiry.
Respondents argue that the matters being investigated are not within the express grant of authority given to Commissioner Condon. Executive Order No. 11 gives Commissioner Condon authority to investigate “acts of corruption or other criminal activity, conflicts of interest, unethical conduct, and misconduct within the City School District.” Respondents argue that this grant of authority must be narrowly interpreted in connection with the historic origin of the creation of the office, which they claim was a response to widespread corruption within the school system at the time. Thus, they contend that the only “misconduct” which Commissioner Condon is authorized to investigate is “corruption, conflicts of interest and other unethical conduct.” They argue that it does not apply to the behavior of school personnel in this case.
The court disagrees with respondent’s extremely narrow interpretation of Executive Order No. 11. The Executive Order *881 should be interpreted to give effect to all of its terms. Language should not be considered superfluous. (Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475 [2001].) Corruption, conflicts of interest and unethical conduct are expressly included within the Commissioner’s grant of investigative authority. The additional express reference to “misconduct” clearly was intended to refer to conduct not otherwise coming within the other express categories. The concept of misconduct is broad enough to encompass the issue of whether BOE employees have exposed school-age children to or had them engage in conduct that violates federal laws. Moreover, the fact that the SCI is the only administrative investigatory body for the City School District supports an interpretation that the executive grant of investigatory power pertains to any and all manner of misconduct that is of concern to the BOE, especially including the welfare of children entrusted to its care. The more crabbed interpretation advocated by respondents would mean that certain types of misconduct within the City School District could never be investigated. This is an irrational and unacceptable result. While respondents believe that the matters being investigated may be slight or trivial, neither they nor the court should invade the SCI’s province to determine what may be of concern to the BOE.
C. Constitutional Sufficiency
1. First Amendment
Respondents argue that the subpoenas violate their First Amendment freedom of association. They claim that “IFCO is a religious and ideological organization devoted to promoting peace and brotherhood among nations.” IFCO advocates “against the economic embargo of Cuba and . . . supports fact gathering activities designed to learn more about Cuban people and their way of life ... It associates with other like minded individuals in pursuit of these matters.”
They claim, as a general matter, that because IFCO is a religious and ideological organization with controversial views, it has the right to anonymous association and protection of the identity of its donors and supporters. (NAACP v Alabama ex rel. Patterson, 357 US 449 [1958].) They further contend that the subpoenas, seeking disclosure of their contributors’ identities, is not sufficiently narrowly tailored to protect IFCO’s freedom of association. (See McIntyre v Ohio Elections Comm’n, 514 US 334 [1995].)
Respondents’ argument fails. The subpoenas do not seek general lists of IFCO’s membership, nor do they seek a general list *882 of IFCO’s contributors. The subpoenas seek only those documents related to the particular trips made to Cuba by Beacon employees and students during a specified period of time. The contributors referred to in the subpoenas are only those who funded in whole or part these trips. While respondents may have demonstrated that IFCO is a group that engages in expressive association, they have failed to establish that their associational rights are being infringed upon by the challenged governmental action. (Boy Scouts of America v Dale, 530 US 640 [2000].) Respondents have not demonstrated any way in which their associational rights are threatened by complying with the subpoenas. (New York State Commn. on Govt. Integrity v Congel, supra; see also Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO, 72 NY2d 307 [1988].)
Even if respondents could establish any burden to their right to associate, governmental action is not unconstitutional as long as it serves compelling state interests unrelated to the suppression of ideas that cannot be achieved through means significantly less restrictive of associational freedoms. (Roberts v United States Jaycees, 468 US 609 [1984].) In this regard the subpoenas are narrowly tailored and the court is not persuaded by respondents’ speculation that IFCO’s documents are readily ascertainable from other sources.
2. Fourth Amendment
Respondents claim that the information sought by the subpoena is irrelevant and, therefore, violates the Fourth Amendment of the United States Constitution. Once a motion to quash a subpoena is made, the issuing agency must come forward to establish the relevancy of the materials sought. (Virag v Hynes, supra; New York Shredding Corp. v New York City Dept. of Investigation, 184 Misc 2d 174 [Sup Ct, NY County 2000].) However, this requirement of subject matter identification is not very exacting. All that the issuer of an office subpoena need demonstrate in order to resist a motion to quash is that the materials sought have a reasonable relation to the subject matter under investigation and to the public purpose to be achieved. (Virag v Hynes, supra.)
That burden has been met in this case. The matter under investigation includes whether BOE employees, without permission, arranged for students to travel to Cuba in violation of federal laws and/or did so without fully apprising the students’ parents and guardians of the circumstances of the travel. There *883 is information that IFCO helped organize these trips. Documents related to the organization and/or facilitation of the travel bears a reasonable relation to the matters under the SCI investigation. This showing satisfies the SCI’s burden on this issue of relevancy and any attendant Fourth Amendment considerations.
3. Fifth Amendment
IFCO and Reverend Walker generally claim that responding to the subpoenas will violate their Fifth Amendment privileges against self-incrimination. Collective entities such as IFCO, however, do not have a right to assert a Fifth Amendment privilege. (Armstrong v Guccione, 470 F3d 89 [2d Cir 2006]; State of New York v Carey Resources, 97 AD2d 508 [2d Dept 1983].) Even if the custodian of records is incriminated by their production, the entity having custody of the records must produce them. (Braswell v United States, 487 US 99, 109-110 [1988].) Thus IFCO must respond to the subpoena without respect to any claim against self-incrimination, even if such documents may incriminate Reverend Walker.
To the extent Reverend Walker asserts a personal privilege against self-incrimination, a different analysis ensues. He may certainly assert the privilege as to personal documents in his custody. He may also assert a privilege as to questions put to him personally about events and circumstances. (Curcio v United States, 354 US 118 [1957].) The privilege, however, may not be asserted blunderbuss and Reverend Walker may not simply fail to appear. In connection with his testimony, he must appear, be sworn and assert the privilege as is relevant to the particular questions that are put to him. (Flushing Natl. Bank v Transamerica Ins. Co., 135 AD2d 486 [2d Dept 1987]; Agapov v Agapov, NYLJ, Aug. 29, 2000, at 23.) With respect to documents, he must provide a privilege log that will initially allow the bona fides of his privilege claim to be evaluated. (See e.g. CPLR 3122 [b]; Matter of Stenovich v Wachtell, Lipton, Rosen & Katz, 195 Misc 2d 99 [Sup Ct, NY County 2003].) In this regard, the court rejects respondents’ contention that the documents cannot be identified in such a way so as not to violate the privilege. Privilege logs are routinely used to parse out these issues. In the event, however, that the bona fides of Reverend Walker’s personal claim of privilege cannot be ascertained from his testimony or his log, petitioner reserves the right to make an application before this court for an in camera review.
*884 Conclusion
In accordance herewith it is hereby ordered that the petition to compel the Inter-Religious Foundation for Community Organization, Inc. to comply with the subpoena duces tecum directed to it is granted and the Inter-Religious Foundation for Community Organization, Inc., by its custodian of records, shall appear with and give testimony about the documents identified therein at the offices of Commissioner Condon on February 5, 2008 unless the parties mutually agree in writing to another date, and it is further ordered that the Inter-Religious Foundation for Community Organization, Inc.’s cross motion to quash the subpoena and dismiss the petition directed to it is denied in its entirety, and it is further ordered that the petition to compel Reverend Lucius Walker, Jr. to comply with the subpoena duces tecum directed to him is granted and Reverend Walker shall appear with and give testimony about the documents identified therein at the offices of Commissioner Condon on February 5, 2008 unless the parties mutually agree in writing to another date, and it is further ordered that to the extent Reverend Walker is claiming that any of the requested documents are being withheld based upon a privilege against self-incrimination, then such documents shall be identified in a privilege log that shall be produced at the time Reverend Walker is scheduled to give testimony pursuant to the subpoena duces tecum directed to him, and it is further ordered that Reverend Walker’s cross motion to quash and dismiss the petition directed toward him is denied in its entirety.