OPINION OF THE COURT
Simons, J.
 A New York County Grand Jury has issued subpoenas duces tecum for the membership lists of four Union Locals of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and they have moved to quash, claiming the subpoenas violated their First and Fourth Amendment rights under the United States Constitution. The courts below denied the motion, and petitioners’ subsequent motion for a stay, and they now have surrendered the lists to the District Attorney. We conclude that the District Attorney’s continued possession of the membership lists pending the completion of the Grand Jury’s investigation does not violate the constitutional rights of the Union Locals or their members and therefore affirm.
The proceeding arises out of an investigation into corruption in the carpentry and drywall industry. It focused primarily on high-ranking union officials but the prosecutor informed the court that he assumed that some rank and file members might also become targets. Pursuant to this investigation the New York County District Attorney’s office issued subpoenas duces tecum to Locals 17, 135, 257 and 608 of the Carpenters Union, requesting that each produce a list containing the names, addresses, home telephone numbers and Social Security numbers of their members. The Locals moved to quash the subpoenas, claiming violations of their First and Fourth Amendment rights. The District Attorney opposed the motion claiming that the First Amendment rights of petitioners’ members were not implicated but contending alternatively that even if membership in a union came within the associational rights addressed in the Federal cases, that the People had met the compelling State interest test and were entitled to the records. On the basis of these claims, the trial court conducted an in camera hearing during which it pressed the District Attorney on the need for the information, particularly the need for the *311 Social Security numbers, and the possibility of limiting the number of names produced. After considering the District Attorney’s arguments, the court denied the motion, but limited the subpoena to the extent of requiring that the lists remain under the direction and control of the principal Assistant District Attorney assigned to the investigation, ordering him not to duplicate them and requiring that he return the lists to the Locals upon completion of the Grand Jury’s investigation.
The Appellate Division refused to stay Supreme Court’s order and petitioners surrendered the lists to the District Attorney. It subsequently affirmed Special Term’s order on the merits and petitioners appeal to this court on constitutional grounds.
I
Although neither petitioners nor respondent contends that the appeal is moot, mootness is a doctrine related to subject matter jurisdiction and thus must be considered by the court sua sponte (see, Matter of Hearst Corp. v Clyne, 50 NY2d 707, 713-714; People ex rel. Geer v Common Council, 82 NY 575, 576). Ordinarily, if a party has surrendered subpoenaed material, the legal injury has occurred and the courts cannot provide an effective remedy. That being so, the appellate court must dismiss the appeal unless it falls within the well-recognized exception where courts may exercise their extraordinary discretion to entertain the appeal notwithstanding mootness (Matter of Roadway Express v Commissioner of N. Y. State Dept. of Labor, 66 NY2d 742, 744). This case does not fall within the traditional exception (see, e.g., Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151, 154, n 2; Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715, supra; Matter of Jones v Berman, 37 NY2d 42, 57). Although the First Amendment question posed is substantial, and novel in this court, it is not the type which will typically evade review because a stay can be obtained to preserve the issue for appellate review before the material is surrendered.
Nevertheless, an appeal is not rendered moot if there remain undetermined rights or interests which the respective parties are entitled to assert (Matter of District Attorney of Suffolk County, 58 NY2d 436, 443; Gilpin v Mutual Life Ins. Co., 299 NY 253, 261-262; see, Cohen and Karger, Powers of the New York Court of Appeals § 98, at 417 [rev ed]). In this *312 case, the rights of the parties remain undetermined because the membership lists which, pursuant to Supreme Court’s order, cannot be copied, remain under the control of the Assistant District Attorney and continue to be used by him in the investigation (cf., Matter of Roadway Express v Commissioner of N. Y. State Dept. of Labor, 66 NY2d 742, supra [no argument that continued possession of the subpoenaed material constituted a continuing injury]). We, therefore, turn to the merits.
II
The Locals’ primary argument is that the continued enforcement of the subpoenas will have an inevitable "chilling effect” on the association rights of their members. Specifically, the Locals contend that carpenters in New York City will perceive a connection between being a union member and being called before the Grand Jury and this perception may deter individuals from joining the union or discourage members from attending union meetings or engaging in robust debate with other members.
When a First Amendment claim is presented, the government may not enforce a subpoena of this type unless it is substantially related to a compelling governmental interest (Brown v Socialist Workers ’74 Campaign Comm., 459 US 87, 91-92; Buckley v Valeo, 424 US 1, 64; see also, Communist Party v Control Bd., 367 US 1, 92-103). Unquestionably, the State has a compelling interest in preventing and fighting corruption in the construction industry and the establishment of a specialized Grand Jury is a legitimate means of doing so. Although petitioners dispute it, the membership lists have a substantial relation to the investigation because they will enable the Grand Jury to locate and identify union members, the potential witnesses for Grand Jury testimony, without unduly burdening or delaying the search and without having to proceed through the traditional channels of first notifying the union leaders and exposing witnesses to possible intimidation.
The cases petitioners cite in support of their claim are inapposite. In N. A. A. C. P. v Alabama (357 US 449), the State of Alabama sought access to the membership rolls of the NAACP ostensibly to determine whether the Association was conducting an intrastate business in violation of the State foreign corporation registration statute. The court recognized *313 in that case that petitioners had been subjected to prior harassment and reprisal from the government (id., at 462-463) and that the State did not actually need the membership lists to determine whether the Association was conducting a business (id., at 464-465). In Pollard v Roberts (283 F Supp 248 [three-Judge court], affd Per Curiam without opn 393 US 14), the State of Arkansas sought to obtain a list of the names of all contributors to the Republican Party to determine whether votes were being bought. In quashing the subpoena, the court held that the State had made no showing that the identities of Republican Party contributors was even "reasonably relevant to defendant’s investigation of alleged vote buying” (id., at 257). The court also noted that although there had been no showing that any individuals had been subjected to reprisals on account of contributions to the party, "it would be naive not to recognize that the disclosure of identities of contributors * * * would subject at least some of them to potential economic or political reprisals of greater or lesser severity” (id., at 258). In this case, however, the Grand Jury has a legitimate and compelling need for the lists to conduct its investigation.
Petitioners also claim the subpoenas are overbroad because, although the primary focus of the Grand Jury’s investigation is on the illegal activities of the Union leaders and stewards, the Grand Jury seeks the names, addresses and Social Security numbers of each member of the four Locals. They contend that the reasoning of the court in Local 1814, Intl. Longshoremen’s Assn. v Waterfront Commn. (667 F2d 267) requires reversal here.
In Waterfront a labor union and its political action committee brought suit to enjoin the Waterfront Commission from enforcing a subpoena issued during an investigation into whether longshoremen were being coerced into authorizing payroll deductions for contributions to a political action committee. The subpoena sought the list of all longshoremen who recently authorized payroll deductions. The District Court enforced the subpoena but only after modifying it to limit disclosure on a random basis to 10% of the names the Commission sought. The parties cross-appealed, and the Court of Appeals for the Second Circuit affirmed, holding that although disclosure of the names of the contributors to the PAC would have a chilling effect on free association rights the Commission had a compelling interest in obtaining them. The court observed that the subpoena bore a substantial relation to *314 effectuating the governmental interest justifying enforcement of the subpoena but stated that the subpoena, as drafted, was too broad. It noted that if the 10% limitation of the District Court was inadequate for the Commission to meet its goals, it could reapply to the court for further disclosure.
Waterfront may be distinguished from this case on several grounds. First, the union in Waterfront raised a First Amendment claim because it feared that the disclosure of the names of contributors to political parties or political action committees sought by subpoena would discourage future activity or contributions by its members (see also, Pollard v Roberts, supra). Economic activity, such as membership in a union, may also be protected. As the Supreme Court noted in N. A. A. C. P. v Alabama (357 US 449, 460-461, supra), "it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters * * * state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny”.
But the effect subpoenas have on the membership of a union and participation in its activities is quite different from the effect subpoenas may have on membership in a political group or participation in its activities. Because of the advantages of union membership and the need to disclose it for employment it is not generally concealed or denied. Accordingly, we cannot presume that individuals would give up their union status, and corresponding assurance of well-paid jobs, simply because the Grand Jury knows they are union members and petitioners have not demonstrated that organizational activity would be curtailed because of the delivery of the lists. Waterfront is also distinguishable because there the requesting governmental body had access to the names and addresses of the longshoremen from another source, the Commission’s membership list, a fact which certainly affected the balancing process performed by the courts. Some of the information here also could be obtained from other sources, as the District Attorney conceded, but not from any central list, only by far more intrusive searches through countless personal records. Finally, while a random selection of names in Waterfront sufficiently served the Commission’s interest in determining whether coercion of the union rank and file existed, in this case we agree with the courts below, after examining the transcript of the in camera hearing, that the District Attorney *315 has established that a random selection of names would not adequately serve the Grand Jury’s purpose.
III
Petitioners also contend that the subpoenas are so broadly drafted that they violate the Fourth Amendment’s prohibition against unreasonable searches and seizures. The Supreme Court has stated that the Fourth Amendment provides protection against a Grand Jury subpoena duces tecum "too sweeping in its terms to be regarded as reasonable” (Hale v Henkel, 201 US 43, 76; see also, United States v Dionisio, 410 US 1, 11-12 [dictum reaffirming principle]). We have made clear, however, that a subpoena duces tecum, unlike a search warrant, does not have to be supported by probable cause (Matter of Hynes v Moskowitz, 44 NY2d 383, 394, appeal dismissed 439 US 921).
The standard of reasonableness rather than probable cause is appropriate because of the substantial differences between a search warrant and a subpoena duces tecum. A search and seizure is conducted abruptly, without advance notice, often with force or the threat of force. A subpoena, in contrast, remains at all times under the control and supervision of a judicial officer and may be challenged before compliance through a motion to quash (see, id., at 394; United States v Doe [Schwartz], 457 F2d 895, 898, cert denied 410 US 941). Moreover, the unannounced search and seizure of documents often results in serious social stigma. A subpoena is served in the same manner as any summons or other legal process and typically no stigma whatsoever attaches if it is enforced. Indeed, the distinctions between warrants and subpoenas are so evident that it has been suggested by some courts that the restrictions on overbroad subpoenas duces tecum rest not on the Fourth Amendment’s prohibition against unreasonable searches and seizures, but on the less rigid requirements of the Due Process Clause (see, In re Horowitz, 482 F2d 72, 75-79 [Friendly, J.] cert denied 414 US 867, reh denied 414 US 1052; United States v Doe [Schwartz], 457 F2d 895, 900, supra; People v Doe, 84 AD2d 182, 201, n 14 [all cases reviewing applicable Supreme Court precedent]). Whatever the source of the constitutional right of an individual to be free from overly broad subpoenas duces tecum, "[a]ll that is required under the State and Federal Constitutions is that the subpoenaed materials be relevant to the investigation being conducted and that *316 the subpoena not be overbroad or unreasonably burdensome” (Matter of Hynes v Moskowitz, 44 NY2d 383, 394, supra [citations omitted]; see also, See v City of Seattle, 387 US 541, 544; Oklahoma Press Publ. Co. v Walling, 327 US 186, 208-209).
Based on this standard, we conclude that the subpoenas are neither overly broad nor burdensome and that the information sought is relevant.
It is useful to compare this case with Hale v Henkel (supra), where the Supreme Court found the subpoena to be overly broad and unduly burdensome. In that case the court stressed the fact that if the subpoena were enforced as written it would "completely put a stop to the business of [the] company” (201 US, supra, at 77). Here, by contrast, the subpoenas only request that the Locals submit a copy of the membership lists. Nor is the subpoena subject to criticism on the grounds of vagueness or, using Fourth Amendment terminology, lack of particularity in the description of the documents sought. The Locals were told specifically what they were obligated to produce, the tasks required only a matter of minutes to accomplish and it did not interfere with the Locals’ continued operation.
Petitioners contend further that the names, addresses and Social Security numbers of every member of all four Locals are not relevant. The District Attorney contends that to limit the subpoenas to one Local, to a portion of the membership of one or more Locals, or to certain jobsites would immediately signal the suspected parties and that it would not be adequate because he has no way of knowing which members, for example, witnessed bribes, the illegal violation of collective bargaining agreements or other corrupt activities. He agrees that the information subpoenaed is not necessary in all cases and that some areas of inquiry do not relate to all the Locals but he asserts that narrowing the demand to produce would clearly indicate the areas of investigation and potential charges against each Local and those members who are believed to have knowledge, information which could seriously impede the investigation. His claim is supported by the material revealed to the Trial Justice during the in camera hearing.
Relevancy, of course, cannot be reduced to a formula; only general guidelines can be restated. We have often noted the Grand Jury subpoenas are presumptively valid and can only be quashed by proving an affirmative act of impropriety or *317 bad faith (Virag v Hynes, 54 NY2d 437, 442-443; Matter of Additional Jan. 1979 Grand Jury v Doe, 50 NY2d 14, 20; Matter of Manning v Valente, 272 App Div 358, 361). The party seeking to quash a subpoena duces tecum must "demonstrate 'that a particular category of documents can have no conceivable relevance to any legitimate object of investigation by the * * * grand jury’ ” (Virag v Hynes, 54 NY2d 437, 444, supra, quoting In re Horowitz, 482 F2d 72, 80, supra). Petitioners’ attempt to distinguish Virag v Hynes on the ground that it did not involve an assertion of the Fourth Amendment’s right to be free from unreasonable searches and seizures fails because the standards set forth in Virag satisfy all Fourth Amendment concerns.
Addressing briefly the points raised by the dissent, both the Locals and the People extensively argued the applicability of the First Amendment claim in the moving and responding papers and in their briefs to Supreme Court. While the trial court did not issue a written decision when it denied petitioners’ motion, it had the applicable law presented to it and necessarily engaged in a balancing process before denying the motion to quash. Whether it did so or not is academic at this stage, however, because we have reviewed the record and balanced the competing interests and conclude its decision was correct. Insofar as the dissent contends that the union offered alternatives to compromise the matter, the alternatives were suggested for the first time in the Appellate Division. Finally, although the Assistant District Attorney conceded the obvious, that not all members of the Locals would be called to testify before the Grand Jury, he insisted on the need for all names because at this stage of the investigation it is impossible to determine which members had pertinent information and because it is important that all names be delivered so that the investigation will not be endangered.
IV
We have reviewed the Locals’ remaining contention that the Labor-Management Reporting and Disclosure Act of 1959 (see, 29 USC § 481) shields disclosure of the membership lists to a Grand Jury and conclude that it is without merit.
Accordingly, the order of the Appellate Division should be affirmed.