# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-01309-SCT

*EX PARTE: JONES COUNTY GRAND JURY, FIRST JUDICIAL DISTRICT: STATE OF MISSISSIPPI*

*v.*

*JEANNENE T. PACIFIC*

### CONSOLIDATED WITH

### 95-CA-01383-SCT

*EX PARTE: JONES COUNTY GRAND JURY, FIRST JUDICIAL DISTRICT: STATE OF MISSISSIPPI*

*v.*

*JEANNENE T. PACIFIC*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/25/95 |
| TRIAL JUDGE: | HON. HARVEY S. BUCK |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM HAROLD ODOM |
| | TRAVIS BUCKLEY |
| ATTORNEYS FOR APPELLEE: | THOMAS ROYALS |
| | CYNTHIA STEWART |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 12/18/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/12/98 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. <u>INTRODUCTION</u>

¶1. This case arises from an attempt by the Grand Jury of the First Judicial District of Jones County

to subpoena financial records from the Jones County District Attorney, Jeannene Pacific. The records at issue related to over $35,000 in expenditures from the Jones County Worthless Check Unit to Pacific and her staff as "salary supplements" and to various local businesses for the entertainment of Pacific and her staff.[1]

¶2. Pacific contended that the Grand Jury had been unduly influenced, and successfully moved before a special judge for a stay in the proceedings of the Grand Jury. In issuing the injunction, the special judge held that this particular Grand Jury had been unduly influenced, and limited his ruling to that Grand Jury. The Grand Jury appealed.

¶3. Technically, this case is moot, because the trial court's injunction only applied to that particular Grand Jury, which has since been discharged. However, this Court finds that this situation is capable of repetition, yet evading review. Therefore, this opinion is written primarily to guide the trial court, should this situation reoccur. The only issue addressed herein is the propriety of the injunction.

¶4. This Court notes with appreciation the service of the special judge in disposing of this difficult and unusual case. However, this Court holds that a Grand Jury cannot be enjoined from conducting lawful investigations and deliberations. This is particularly true in the case *sub judice*, because the Grand Jury is obligated by the State Constitution and the Mississippi Code to consider charges against public officials and to investigate the expenditure of county funds. Furthermore, because the proceedings of the Grand Jury are secret, there is no indication that the Grand Jury's subpoena related to an investigation of Pacific specifically.

## II. STATEMENT OF THE CASE AND CHRONOLOGY OF EVENTS

¶5. This case evolves from a complex set of facts surrounding Pacific's alleged mishandling of over $35,000 from the Jones County Worthless Check Unit. These expenditures had been the subject of numerous investigations, including investigations by the State Auditor's Office, the Attorney General's Office, a Special Grand Jury in the Second Judicial District of Jones County [hereinafter the Laurel Grand Jury], and the *Laurel Leader-Call* newspaper. These investigations led to personality conflicts between Pacific and numerous others. Those conflicts created the backdrop against which the case *sub judice* occurred.

¶6. The record reflects that, in October, 1994, the State Auditor's Office investigated the expenditures and determined that Pacific and her staff should repay the money. Pacific and her Assistant repaid approximately $30,000; however, at the time of the hearing at issue, some money disbursed as a "salary supplement" to one of Pacific's investigators remained outstanding.[2] The State Auditor did not recommend criminal prosecution regarding the misuse of these funds.

¶7. In February, 1995, Attorney Travis Buckley filed a civil lawsuit against Pacific on behalf of his client, Jeff Pittman (as a taxpayer), and demanded repayment of the Worthless Check Unit's funds. Jeff Pittman is the son of Tom Pittman. On February 27, 1995, the Grand Jury of the First Judicial District of Jones County [hereinafter the Ellisville Grand Jury] was duly empaneled, and Tom Pittman was appointed Foreman.

¶8. On March 1, 1995, Pacific moved to dismiss Pittman as Grand Jury Foreman and alleged that he was biased against her.[3] Pacific also moved for Circuit Judge Billy Joe Landrum to recuse himself

from hearing the motion to dismiss Pittman as Grand Jury Foreman. The record evinces some possible sources of tension between Pacific and Judge Landrum.[(4)] Indeed, in a related case, the special judge convicted Pacific of criminal contempt for making derogatory comments regarding Judge Landrum.[(5)]

¶9. Judge Landrum denied Pacific's motion to recuse himself from hearing Pacific's motion to remove the Grand Jury Foreman. Thereafter, a hearing was held on Pacific's motion to have Pittman removed as Grand Jury Foreman, and Attorney Travis Buckley[(6)]appeared as an *amicus curiae*. The motion was denied.[(7)]

¶10. On August 8, 1995, the Ellisville Grand Jury issued a subpoena to Pacific for "[a]ny and all records sent to the State Auditor's Office, including but not limited to forms submitted to State Auditor on a timely basis reflecting expenditures as it pertains to the bad check unit, and copies of any and all receipts and expenditures relating to the bad check unit." The subpoena was to be complied with on or before August 14, 1995.

¶11. On August 11, 1996, Pacific moved to quash the Grand Jury subpoena, and alleged that the checks issued on the Worthless Check Unit's account were all executed in the Second Judicial District of Jones County. Pacific further contended that the matter had already been investigated by the Laurel Grand Jury (which returned no bill against Pacific). Therefore, Pacific argued that the Ellisville Grand Jury was collaterally estopped from investigating her. In a separate filing, Pacific also moved to recuse Circuit Judge Landrum from hearing the motion to quash the subpoena. Judge Landrum granted the motion to recuse, and this Court appointed a special judge to consider the matter.

¶12. On September 1, 1995, Pacific petitioned the trial court to stay temporarily and permanently further proceedings against her by the Ellisville Grand Jury. She again alleged that the transactions involving the funds from the Worthless Check Unit took place in the Second Judicial District and not the First Judicial District of Jones County. She also repeated her contention that the matter had already been investigated by the Laurel Grand Jury, and no indictment was issued.

¶13. In addition, Pacific claimed that Tom Pittman (member and previous Foreman of the Ellisville Grand Jury) was biased and prejudiced against her, and Pittman only resigned as Grand Jury Foreman as part of a sham to "pretend fairness toward" her. She also alleged that the Ellisville Grand Jury had no prosecutor directing it[(8)] and had been run by Judge Landrum. She further contended that Attorney Buckley "may well be advising Pittman and, therefore, the Grand Jury. Buckley has been seen meeting with Judge Landrum at critical times in the Ellisville investigation."

¶14. Furthermore, Pacific claimed that "Pittman may try to manipulate the [Ellisville] Grand Jury in such a way as to have her indicted without all members being present or by other device." Pacific alleged that she would not be given a chance to defend herself before the Ellisville Grand Jury. She argued that she could not do her job as District Attorney because she was "being harassed" by the "illegally managed" Ellisville Grand Jury;

¶15. That same day, Pacific amended and supplemented her petition to stay the proceedings of the Grand Jury. She alleged that the Grand Jury had been improperly influenced, citing ***Hood v. State***, 523 So. 2d 302 (Miss. 1988). In support of both the motion to stay and the amended/supplemental

motion to stay, Pacific filed the affidavit of Talitha Hendry, an employee of the Jones County District Attorney's Office. On August 14, 1995, the date Pacific's subpoena was to have been returned, Pacific had posted Hendry "outside [the door of the Ellisville Grand Jury room] where [Hendry] could hear." Hendry's affidavit contained a summary of those who entered and exited, what items they had in their possession, and how long they stayed in the Grand Jury room that day.

¶16. On September 8, 1995, the special judge began conducting hearings on Pacific's various motions. The hearings were concluded September 14, 1995, and the special judge ruled that the motion to quash the subpoena was moot because the date had passed for return of the subpoena. The special judge granted Pacific's motion to stay the proceedings of the Ellisville Grand Jury, and issued the following bench ruling:

> Now the Court finds that if a crime was committed, and I am not judging whether it was or not, but if a crime was committed of larceny or embezzlement, in this Court's opinion it was committed in the Second District of Jones County, and that's where it should have been tried, or should be tried.

> The Court further finds that there has been some undue influence presented to the present grand jury, and if it was not contaminated by that it probably has certainly been contaminated by these hearings.

> The Court would order that that grand jury not to proceed further on this case -- the case of the District Attorney and the funds.

> Now this is not working any hardship on the Court because the Court can discharge that grand jury and empanel another grand jury whenever they want to. . . .

> And they can empanel a grand jury in this district if they think it should be presented here, but I understand it has been presented here at one time. I think the Court is free to empanel another grand jury whenever and wherever he would like, but I would not permit this presently constituted grand jury of the First District to proceed further on this case.

> That's the subject of my order there.

Thereafter, the special judge issued his order permanently enjoining the then "present" Ellisville Grand Jury from "further investigation of Jeannene Pacific and her office involving checks written from accounts of the Bad Check Unit."

¶17. The Grand Jury moved for reconsideration or, alternatively to, strike a portion of the injunction. The Grand Jury alleged that the trial court was without jurisdiction to hear and consider Pacific's motion to quash, because Pacific had no standing to contest the deliberations of the Grand Jury prior to the return of a report or an indictment. In the alternative, the Grand Jury moved to strike the portion of the restraining order which provided that venue for any crime involving the money from the Worthless Check Unit would properly be the Second Judicial District of Jones County -- and not the First Judicial District of Jones County.[(9)]

¶18. Prior to the special judge's ruling on the motion to reconsider, the Grand Jury filed a notice of appeal on October 31, 1995. On November 17, 1995, the special judge denied the motion to

reconsider. On November 27, 1995, the Grand Jury filed a second notice of appeal. On March 15, 1996, this Court consolidated the two "cases" that resulted from the filing of two notices of appeal. There is actually only one case before this Court with regard to this matter, and it raises the following question for consideration:

**WHETHER THE TRIAL COURT ERRED IN PROHIBITING THE GRAND JURY OF THE FIRST JUDICIAL DISTRICT OF JONES COUNTY FROM CONSIDERING ANY CLAIM OF CRIMINAL CONDUCT BY THE JONES COUNTY DISTRICT ATTORNEY?**

### III. LEGAL ANALYSIS

¶19. Initially, Pacific contends that the Grand Jury has no standing to appeal the trial court's ruling in this case. Specifically, Pacific argues that, as this case arose from her citation for criminal contempt, she is the only person with a right to appeal. This argument does not accurately reflect the record, which very clearly indicates that the appeal *sub judice* arose from the injunction of the Grand Jury -- and not the contemporaneous hearings on the criminal contempt matter.

¶20. Pacific also argues that the Jones County Grand Jury is not an identifiable appellant. However, Pacific had no difficulty in identifying this entity for purposes of petitioning the trial judge to enjoin the Grand Jury from investigating her, which petition instigated this entire course of events.

¶21. Pacific argues that the Jones County Grand Jury cannot appeal the ruling in this case because Miss. Code Ann. § 99-35-103 only allows the State to appeal in a criminal case under the following inapplicable circumstances: a) from a judgment sustaining a demurrer to, or a motion to quash an indictment, or an affidavit charging a crime; b) from a judgment actually acquitting the defendant where a question of law has been decided adversely to the State or municipality; and, c) from a ruling adverse to the State or municipality in every case in which the defendant is convicted and prosecutes an appeal. *See* Miss. Code Ann § 99-35-103 (Supp. 1996).

¶22. This same argument was raised in *State v. Burrill*, 312 So. 2d 1 (Miss. 1975), in which the State sought to appeal the trial judge's ruling that (upon the request of someone investigated by the Grand Jury) a stenographer could be brought into the Grand Jury room to transcribe the proceedings regarding the investigatee. This Court held that the provisions of Miss. Code Ann. § 99-35-103 only applied "where there is an actual prosecution of a criminal cause to final judgment. Other than in criminal causes, the state has the same right as any other litigant to prosecute an appeal under the general appeals statute." *Burrill*, 312 So. 2d at 3. *See also* Miss. Const. Art. 3, § 24 (1890) ("All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.").

¶23. Applying the reasoning in *Burrill*, it seems clear that the State may appeal this injunction imposed on the Grand Jury. This is particularly true, in view of § 175 of the Mississippi Constitution of 1890 (which provides that "[a]ll public officers, for wilful neglect of duty or misdemeanor in office, shall be liable to presentment or indictment by a grand jury") and Miss. Code Ann. § 13-5-47 (3) (which mandates that the Circuit Judge "particularly charge" the Grand Jury "concerning enforcement" of the statutes regarding "assessment, collection and disbursement of the public revenues, both state and county"). *See Also 38 Am. Jur. 2d § 26* ("An investigation by a grand jury,

when directed by the court, involves all the powers and incidents necessary to complete inquiry into the subject matter in charge.") and *§ 27* ("The grand jury's investigation and full duty are not performed unless and until every clue has been run down and all witnesses examined in every proper way to find out if a crime has been committed, and to charge the proper person with the commission thereof.").

¶24. This case involves a possible investigation of the District Attorney, who in ***Burrill***, instigated the appeal of the trial judge's ruling on behalf of the State. However, had any other public official in Jones County successfully sought to enjoin the Ellisville Grand Jury's investigation of himself or herself, Pacific could have appealed such an injunction on behalf of the State. Therefore, the situation is no different, just because the District Attorney might have been the subject of the Grand Jury's investigation.

¶25. Pacific also claims that the appeal as moot. Because the Grand Jury at issue has already been finally discharged, this issue is, indeed, moot. "However, the doctrine which prevents adjudication of moot cases provides an exception for those cases which are capable of repetition yet evading review." ***See Mississippi High School Activities Ass'n, Inc. v. Coleman***, 631 So. 2d 768, 772 (Miss. 1994).

**¶26.** It is conceivable that Pacific could be investigated by a future Grand Jury and that she could attempt to stay the proceedings of that Grand Jury. It is also conceivable, that, by the time an appeal from such an action could be heard, the Grand Jury at issue would already have been released from service. For these reasons, this Court will consider the merits of this appeal, under the auspices of ***Coleman***. *See Id.*

## WHETHER THE TRIAL COURT ERRED IN PROHIBITING THE GRAND JURY OF THE FIRST JUDICIAL DISTRICT OF JONES COUNTY FROM CONSIDERING ANY CLAIM OF CRIMINAL CONDUCT BY THE JONES COUNTY DISTRICT ATTORNEY?

¶27. The only issue of merit in this case is whether the trial judge had the authority to enjoin the Ellisville Grand Jury from considering any claim that District Attorney Pacific had committed criminal acts. This is a case of first impression, in which a District Attorney successfully sought to enjoin the Grand Jury from what are supposed to be secret deliberations, based upon the District Attorney's belief that the Grand Jury did not like her and might indict her.[(10)]

¶28. Despite the District Attorney's beliefs to the contrary, this Court "must indulge the presumption that the Grand Jury is composed of men [and/or women] who have a reasonable degree of intelligence and would perform their duties in accordance with the law and the evidence before them." ***Mosley v. State***, 396 So. 2d 1015, 1019 (Miss. 1981).

¶29. Furthermore, as stated earlier, § 175 of the Mississippi Constitution of 1890 provides that "[a]ll public officers, for wilful neglect of duty or misdemeanor in office, shall be liable to presentment or indictment by a grand jury." Moreover, Grand Juries are statutorily charged to investigate possible violations of statutes related to the expenditure of county funds. *See* Miss. Code Ann. § 13-5-47(3). That the District Attorney would seek to enjoin the Grand Jury from performing its constitutional and statutory duty is quite unprecedented.

¶30. Moreover, there is nothing in the record to indicate that the Grand Jury actually was investigating Pacific, and there likely never would be such evidence, since Miss. Code Ann. § 13-5-61 (Supp. 1996) provides that such information is secret (at least until six months after final adjournment of the Grand Jury). *See also* Mississippi Uniform Circuit and County Court Rule 7.04 (Grand Jury secrecy).

¶31. In addition, a long line of Mississippi caselaw prohibits a trial judge from singling out a particular defendant in the Grand Jury charge. *See Hoops v. State*, 681 So. 2d 521, 524-25 (Miss. 1996); *Necaise v. Logan*, 341 So. 2d 91, 93 (Miss. 1976); *Fuller v. State*, 37 So. 749, 750 (1905); and *Blau v. State*, 34 So. 153, 156 (1903). Common sense dictates that, if a judge cannot charge the Grand Jury to investigate and/or indict a particular individual, then a judge cannot charge the Grand Jury not to investigate and/or indict a particular individual -- in this case, the District Attorney.

¶32. Finally, although there is no case on point, some general statements of law are particularly pertinent:

> A grand jury has broad investigative power and wide latitude in conducting an investigation, and is the decision maker in exercising its powers. . . .
>
> A grand jury has a responsibility to thoroughly investigate the matters before it. The grand jury need not specify the particular crime or person to be investigated. . . .
>
> A grand jury need not demonstrate any reason for investigating anyone. . . .
>
> The law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority. *It has been held that a mere witness does not have standing to contend that a grand jury is exceeding its jurisdiction.*
>
> * * *
>
> *The court generally will not interfere with the grand jury in the absence of a strong reason for doing so.* The grand jury must be free to pursue its investigations unhindered by external influence or supervision so long as it does not trench on the legitimate rights of any witness called before it. *The court generally cannot limit the grand jury*, its legitimate investigation, interfere with its investigatory function, control the nature of its investigation, *prohibit consideration of offenses within any particular class of crimes, stay its proceedings*, dismiss a matter, or do various other things.
>
> * * *
>
> *It has been said that a grand jury witness is not entitled to challenge the authority of the court or of the grand jury . . . to object to the jurisdiction of the grand jury, to take exception to the jurisdiction of the grand jury over the particular subject matter that is under investigation, or to set limits to the investigation that the grand jury may conduct.*

*38A C. J. S. §§ 76, 78, 131* (emphasis added) (footnotes omitted)

¶33. For all these reasons, the injunction imposed on the Ellisville Grand Jury was improper.

Although that Grand Jury has already been discharged, this opinion is written in order to provide guidance, should a similar situation arise in the future.

## IV. CONCLUSION

¶34. The injunction of the Grand Jury in this case was improper. Furthermore, this Court is concerned that a District Attorney would demonstrate such disrespect for the legal system. Pacific's behavior, as presented in the record of this case, raises serious ethical questions. These actions include her comments about a Circuit Judge and her subsequent criminal contempt conviction; her questionable expenditure of public funds; her public disclosure of matters to be presented to the Grand Jury; and, her apparent interference with the proceedings of a duly empaneled Grand Jury. Based on these concerns, Pacific's actions are hereby referred by this Court to the Mississippi Bar Association for investigation and appropriate disciplinary action. The Supreme Court Clerk is instructed to submit this matter to the Mississippi Bar Association's Committee on Professional Responsibility and Complaint Counsel.

¶35. **REVERSED AND RENDERED**.

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. Miss. Code Ann. § 97-19-77 (Supp. 1996) provides that the money collected by District Attorneys as a service charge for pursuing worthless check complaints

> may be expended by the district attorney for any of the purposes authorized for the expenditure of money under Section 25-31-8, Mississippi Code of 1972 or for any law enforcement related purpose including, but not limited to, the purchase of equipment and supplies and the payment of training costs for any local law enforcement agency within the district attorney's judicial district at the discretion of the district attorney.

Miss. Code Ann. § 97-19-77 (Supp. 1996).

The statutorily approved expenditures authorized in Miss. Code Ann. 25-31-8 include the following:

> necessary expenses of operating the office of the district attorney, including stenographic help, and other items and expenditures necessary and incident to the investigation of criminal cases, the general expenses of the office of the investigation of criminal cases, the general expenses of the office of the district attorney for preparing and/or trying felony cases and all other cases requiring the services of the district attorney.

Miss. Code Ann. § 25-31-8 (Supp. 1996).

This opinion does not speak to the merits of the claims that Pacific's expenditures were unauthorized by law. However, this case does demonstrate the potential for abuse under the current statutory scheme. This Court suggests that the Legislature promulgate more specific guidelines for spending

these funds. Such guidelines would allow for uniformity and accountability in the manner in which these monies are used by District Attorneys throughout the State; a reduction in the potential for abuse of discretion in expending these funds; and, an increase in public confidence in the District Attorney's Office.

2. Pursuant to statute, Pacific earned $72,000 per year, before the salary supplements. Pacific eventually requested an Attorney General's opinion regarding the salary supplement given to her investigator from the Worthless Check Unit. The opinion held that the supplement was improper, and Pacific "immediately stopped it."

3. Several months before the Grand Jury was empaneled, Pittman made statements to the local press comparing Pacific to a bank robber and asking for her resignation. Pacific alleged "that Mr. Pittman would use his advantage as Foreman to conduct an investigation of Jeannene Pacific and that said investigation would be based on personal bias, prejudice, and ill-will toward" Pacific. Pacific also alleged that Pittman might be called as a witness before the Grand Jury on other unrelated criminal matters. There was also evidence of prior friction between Pittman and Pacific with regard to the operation of Pittman's Ellisville pawn shop.

4. Specifically, Pacific testified that, shortly after her first election in 1992, she prosecuted a manslaughter case against a local junior-college student. After Judge Landrum imposed the sentence in that case, Pacific told a local newspaper reporter that "had [she] been asked in regard to a sentence, [she] would have recommended the maximum [sentence, which was considerably greater than that imposed by the Circuit Judge]."

According to Pacific, Judge Landrum was thereafter openly hostile to her and her staff in the courtroom. However, many witnesses testified that Judge Landrum had not been hostile to Pacific, including: Attorney Buckley, Former Circuit Judge James Hester, Attorney James Dukes, Bailiff Charles T. Daley, and Probation Officer Charles Bunnell.

There was ample evidence that Judge Landrum's courtroom demeanor was professional and accommodating towards Pacific and all others who practiced before him. In fact, Pacific's perception of this alleged hostility was the only evidence in the record that such hostility existed. On the other hand, there is evidence that Pacific did not afford Judge Landrum respect.

5. The contempt conviction was based on the testimony of a woman whose nephew Pacific had prosecuted for burglary. Although the nephew had been convicted, no sentence had been issued. The nephew's impending sentence weighed heavily on the woman's terminally ill father, and she initiated contact with Pacific to find out why there had been a delay in the imposition of sentencing. Pacific stated her belief that Judge Landrum had been "paid off" in the matter of the sentencing of the woman's nephew; Pacific also stated that she "knew" Judge Landrum had been "paid off" in the sentencing matter of the junior-college student, but she could not prove it.

Thereafter, in an audiotaped conversation with Suzanne Monk of the *Laurel Leader-Call*, Pacific stated that the matter was under investigation, and that it would be presented to a local Grand Jury at the proper time. *See* Mississippi Uniform Circuit and Chancery Court Rule 7.04 ("No . . . district attorneys . . . shall announce to any unauthorized person what the grand jury will consider in its deliberations. If such information is disclosed, the disclosing person may be found in contempt of

court punishable by fine or imprisonment.").

Based on this evidence, the special judge convicted Pacific of contempt, fined her $400, and sentenced her to serve five months in the Jones County Jail. The prison sentence was suspended on the condition that Pacific publicly and sincerely apologize to Judge Landrum for her comments.

The contempt conviction is not an issue in this appeal; however, it does illustrate why Pacific wished to have Judge Landrum recused from hearing her motion to dismiss Pittman as Grand Jury Foreman. In addition, the record of Pacific's actions underlying the contempt conviction is noteworthy, because these actions raise ethical concerns.

6. There is also evidence of friction between Pacific and Buckley. As stated earlier, Buckley represented a client who sued Pacific civilly for the repayment of the misappropriated Worthless Check Unit funds. In addition, Pacific unsuccessfully moved to have Buckley dismissed as defense counsel in four unrelated criminal matters because Buckley had requested records regarding the Worthless Check Unit in discovery in those cases. Buckley admitted that he was "openly hostile" to Pacific and that he thought she was guilty of grand larceny or embezzlement.

7. Subsequently, Pittman voluntarily resigned as Grand Jury Foreman and was replaced by Foreman Odell Johnson.

8. It should be noted that the Grand Jury may properly convene without inviting the District Attorney to attend its deliberations. *See Necaise v. Logan*, 341 So. 2d 91, 94 (Miss. 1977) (citing Miss. Code Ann. § 25-31-13 (1972) (The district attorney shall attend . . . the grand jury whenever he may be required by the grand jury. . . .")).

9. There was evidence that the checks issued on the Worthless Check Unit's account were all executed in the First Judicial District of Jones County. However, the money in the Worthless Check Unit's account came from the people who wrote bad checks in any area of Jones County. There was ample testimony that the "bad check cases" were prosecuted in both the First and Second Judicial Districts of Jones County. In addition, there was evidence that the checks were drawn on an account with the M & M Bank in Ellisville and delivered to merchants in Ellisville, which is in the First Judicial District of Jones County.

10. Pacific correctly notes that an indictment may be quashed where undue influence has been exerted upon the Grand Jury and cites *Hood v. State*, 523 So. 2d 302 (Miss. 1988). In *Hood*, an unflattering opinion written by a federal court judge in a related action against the accused was presented to the Grand Jury, and this Court held that the indictment should have been quashed because of this undue influence. However, in the case *sub judice*, no indictment had been issued. Rather, Pacific's actions were calculated to prevent the Grand Jury from investigating and/or indicting her. Therefore, *Hood* is distinguishable from the case at hand. Because no indictment had issued, Pacific's actions were premature, and the proposition of law outlined in *Hood* is inapplicable.

It is ironic, however, that Pacific asserts that the Grand Jury was unduly influenced, when such influence is exactly what Pacific sought from the trial judge on her behalf in this case.

Without [the Grand Jury's] previous action no person can be put to trial for an infamous crime

in this state. In other words, those who are guilty of such crimes can be brought to trial only through the diligence of the grand jury in the exercise of its full freedom of action, and they can escape being rendered subject to prosecution only through its dereliction. But its proper function is not only that of returning indictments in proper cases, but also of protecting the citizen against unwarranted accusations--acting in both instances upon its own responsibility, unmoved by public clamor and unawed by power. If the grand jury is to serve its rightful purpose as an institution of the people, safeguarding both the welfare of the public and the rights of the citizen, its deliberations must remain unhampered either by the presence or influence of those in positions of high authority and all others who have no duties to perform in connection with its secret inquests.

*Sanders v. State*, 22 So. 2d 500, 502 (Miss. 1945).