# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-01543-SCT

*ENTERGY MISSISSIPPI, INC.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/06/2012 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | CHARLES EDWIN ROSS |
| | LINDA FAYE COOPER |
| | JAMES W. SNIDER, JR. |
| | BRYAN P. BUCKLEY |
| | THOMAS RICHARD MAYFIELD |
| | MICHAEL GUEST |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHARLES EDWIN ROSS |
| | LINDA FAYE COOPER |
| | JAMES W. SNIDER, JR. |
| ATTORNEYS FOR APPELLEE: | BRYAN P. BUCKLEY |
| | THOMAS RICHARD MAYFIELD |
| | MICHAEL GUEST |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 02/20/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises out of a grand jury subpoena *duces tecum* served upon Entergy

Mississippi, Inc., requesting the names and billing addresses of all of Entergy's residential

customers in two zip codes in Madison County. The subpoena followed Entergy's refusal to

provide its customer list to the Madison County Tax Assessor's Office for those geographic areas which the tax assessor had requested in an effort to identify and combat homestead exemption fraud. Entergy appeals the Madison County Circuit Court's denial of Entergy's Motion to Quash. We affirm.

## PROCEDURAL HISTORY

¶2. Entergy Mississippi, Inc., (Entergy) is an investor-owned public utility that has customers in forty-five counties in Mississippi. Entergy is the exclusive provider of electric power to Madison County customers in zip codes 39110 and 39046. Customers are required to provide to Entergy certain personal information for billing purposes.

¶3. On October 7, 2011, Gerald Barber, Tax Assessor for Madison County, communicated with Steven Lee, Entergy's Customer Operations Manager, and requested a list of customer names and addresses in order to investigate homestead-exemption fraud by comparing the customer list to the current tax roll.[1] In November 2011, Lee responded that Entergy would comply only with a valid grand jury subpoena. During the 2012 session of the state legislature, the Madison County Tax Assessor's Office supported a bill that would have given tax assessors the authority to demand customer lists from public utilities without court review. That bill never emerged from the legislative committee to which it was assigned.

---

[1]In his affidavit, Barber stated that "we have several tools at our disposal, but my office decided one avenue would be to compare the utility listing (by name and address) with the list of persons claiming homestead exemption. My office has done this by obtaining water billing information from the Cities of Ridgeland and Madison, both of whom were cooperative. . . . These efforts helped my office recover in excess of $150,000."

¶4. On January 18, 2012, Entergy was served with a Madison County grand jury subpoena *duces tecum*, directed to the attention of Lee. It commanded presentation of all names, billing addresses, and account numbers for the Deerfield, Lake Caroline, and Ashbrooke subdivisions. The subpoena commanded that the requested documents be produced directly to "Fraud Investigator Brad Harbour of the Madison County Tax Assessor's Office." On January 24, 2012, Lee responded to the subpoena via email, saying that "the preference would be to query an absolute, like a number (zip code)." On January 27, 2012, Barber received a letter from Entergy objecting to the subpoena.

¶5. On March 12, 2012, a second grand jury subpoena *duces tecum* was issued to Entergy, directed to its agent for service process. The second subpoena commanded the immediate production of all account names and billing addresses in zip codes 39110 and 39046. As in the first subpoena, Entergy was commanded to produce the documents directly to the Madison County Tax Assessor's Office, not to the grand jury. On March 19, Entergy objected to the second subpoena.[2] Entergy expressed its concern that, among other things, the subpoena was vague and overly broad. Entergy also stated that the subpoena did not "target individuals specifically suspected of committing homestead exemption fraud, but, rather, seeks information about all citizens" in general. Finally, Entergy was concerned that the subpoena commanded it "to provide private account information to . . . the Tax Assessor's office," stating "documents are normally presented to the grand jury itself and grand jury proceedings have privacy protections."

---

[2]This objection was in the form of a letter from counsel for Entergy to Investigator Harbour.

3

¶6.     On May 27, 2012, Entergy filed a motion to quash the March 12, 2012, grand jury

subpoena. A hearing was set for August 10, 2012. Two days before the hearing, the Madison

County District Attorney withdrew the second grand jury subpoena and caused a third grand

jury subpoena to be issued. The August 2012 subpoena commanded the production of the

names and billing addresses for all "residential accounts" in the zip codes 39110 and 39046.

Unlike the first two subpoenas *duces tecum*, the third was not returnable to the tax assessor's

office, but to the grand jury. Entergy filed an amended motion to quash, and a hearing was

set for September 6, 2012. After the hearing, the Madison County Circuit Court denied

Entergy's motion to quash. On the same day, September 6, the circuit court entered a stay

order.[3] Entergy timely filed a notice of appeal on September 20, 2012, raising the following

issues:

I.      **Whether it is an abuse of the grand jury process to allow the Madison County Tax Assessor's Office to obtain Entergy's customer list for the purpose of civil tax enforcement.**

II.     **Whether the tax assessor's involvement improperly influenced the grand jury, violated the secrecy rules of grand jury proceedings or violated the separation of powers doctrine.**

III.    **Whether the subpoena violates due process and the privacy rights of Entergy's customers.**

IV.     **Whether the subpoena is an improper fishing expedition, and thus an impermissible search and seizure of confidential business information under the Fourth and Fourteenth Amendment.**

---

[3]The order stayed the denial of Entergy's motion to quash "until such time as a higher court has fully adjudicated Entergy Mississippi's appeal of that Order. . . ."

4

¶7.     "This Court applies a *de novo* standard of review to questions of law, such as whether the trial court erred in granting a motion to quash a subpoena." ***Miss. Dep't of Revenue v. Pikco Fin., Inc.***, 97 So. 3d 1203, 1205 (Miss. 2012), *reh'g denied* (Oct. 4, 2012).

**ANALYSIS**

**1.     The subpoena was not an abuse of the grand jury process**.

¶8.     Historically and at present, a grand jury is an independent body empowered with the authority to investigate potential crimes and, if probable cause is found, to indict for criminal offenses. Here, the grand jury requested information that reasonably could lead to information that would support criminal indictments based on tax fraud. The legislature has enumerated additional activities and subject matters for Mississippi grand juries to investigate, some criminal and some civil. To succeed on its motion to quash, Entergy would have had to overcome the presumption that the grand jury was acting within its lawful authority by showing that the information requested in the subpoena had no possible relevance to a legitimate investigation. We hold that Entergy failed to meet that burden. Issuance of the subpoena was a lawful exercise of the grand jury's investigative authority.

¶9.     The third subpoena requested information to be provided the grand jury which reasonably could lead to indictments for crimes. The grand juries of Mississippi specifically have been directed by statute to enforce the laws "providing for the assessment, collection and disbursement of the public revenues, both state and county. . . ." Miss. Code Ann. § 13-5-47 (Rev. 2012). Grand juries have "broad investigative power and wide latitude in conducting an investigation. . . ." ***Ex parte Jones County Grand Jury, First Judicial Dist.***,

5

705 So. 2d 1308, 1315 (¶ 32) (Miss. 1997). The information sought could lead to evidence that would provide probable cause for felony indictments against one or more individuals and/or entities. We hold that the grand jury acted within its legislatively and judicially defined scope and purpose and that the motion to quash its subpoena should not be countenanced by this Court.

¶10.    It is important to note, initially, that "[t]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *Id.* Anyone challenging a grand jury's subpoena must fail unless able to overcome the presumption that the jury is acting within the legitimate scope of its authority. Grand juries in Mississippi clearly are acting within the legitimate scope of their authority if they investigate possible violations of laws which provide for the "assessment, collection and disbursement of the public revenues. . . ." Miss. Code Ann. § 13-5-47 (Rev. 2012). Defrauding the county tax assessor is punishable by up to five years in prison and a fine of $10,000. Miss. Code Ann. 97-7-10 (Rev. 2006). Additionally, anyone who makes "a false or fraudulent application for homestead exemption shall be guilty of perjury." Miss. Code Ann. § 27-33-57 (Rev. 2010). Such perjury carries a penalty of up to ten years in prison. *See* Miss. Code Ann. § 97-9-61 (Rev. 2006). If the grand jury was investigating to determine whether state laws regarding the collection of taxes were being followed, then it was acting within the legitimate scope of its authority and its actions in that regard are unquestionable.

¶11.    The argument made by Entergy, that the grand jury was guilty of an abuse of process through its investigation of a potentially civil matter, is erroneous in light of the broad authority that Mississippi has bestowed upon its grand juries. The legislature has empowered

6

grand juries to investigate various civil matters, *e.g.*, the provision of fire escapes in public buildings; the management of sixteenth section school trust lands; and state forest fire laws, specifically Mississippi Code Section 95-5-25. *See* Miss. Code Ann. 13-5-47 (Rev. 2012). Section 95-5-25 is found in the *Torts* section of our laws, and requires that a person who sets fire to the lands of another is civilly liable to the person injured for damage to his property. Miss. Code Ann. 95-5-25 (Rev. 2013).

¶12.    The code sections relating to the power of a district attorney also are enlightening. The code provides:

> It shall be the duty of the district attorney to represent the state in all matters *coming before the grand juries of the counties within his district* and to appear in the circuit courts and prosecute for the state in his district all criminal prosecutions *and all civil cases* in which the state or any county within his district may be interested. . . .

Miss. Code Ann. 25-31-11 (Rev. 2010) (emphasis added). Further, district attorneys are "authorized to institute . . . any suits arising out of any act or order of the tax commission . . . affecting the laws and revenues of the state, and are also clothed with such other authority as is conferred upon them at common law." Miss. Code Ann. § 25-31-19 (Rev. 2010). While the case at hand does not require an exhaustive analysis of the confluence and interrelationship of these statutes, a fair interpretation of the whole of our state's jurisprudence respecting grand jurors and prosecutors leads to a conclusion that a district attorney is not prohibited from bringing civil tax matters before a grand jury, and arguably has a duty to do so, particularly in light of the fact that the legislature has vested district attorneys and grand juries with authority to investigate a variety of civil matters.

7

¶13.   But, civil investigative authority aside, the attendant criminal ramifications of this grand jury's investigation are sufficient to place the subpoena and the reasoning behind it on solid legal ground. The State argued that the evidence sought by the subpoena was relevant to the investigation of a criminally indictable offense. It is not disputed that, in the event that the investigation reveals tax fraud, the offenders *can be* indicted in the discretion of the grand jury. The subject of the subpoena potentially was relevant to a criminal investigation. Despite the evidence adduced by Entergy that the information garnered could be used for a civil purpose, there remains a very real possibility that the information might be used for a prosecutorial purpose.

¶14.   The United States Supreme Court and courts of other U.S. jurisdictions have found just such a possibility sufficient to uphold a grand jury subpoena. "[W]here . . . a subpoena is challenged on relevancy grounds, the motion to quash must be denied unless the district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." ***United States v. R. Enter., Inc.***, 498 U.S. 292, 301, 111 S. Ct. 722, 728, 112 L. Ed. 2d 795 (1991); *see also **Matter of Grand Jury Subpoenas for Locals 17, 135, 257 and 608 of the United Brotherhood of Carpenters and Joiners of Am., AFL-CIO***, 528 N.E. 2d 1195, 1201 (N.Y. 1988) ("The party seeking to quash a subpoena duces tecum must demonstrate that a particular category of documents can have *no conceivable relevance* to any legitimate object of investigation by the grand jury.") (internal quotations omitted) (emphasis added). Further, proceedings evaluating the relevance and admissibility of documents, which are necessary for subpoenas involved in a trial setting, have no place in

8

the context of a grand jury subpoena. "Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio*, 410 U.S. 1, 17, 93 S. Ct. 764, 773, 35 L. Ed. 2d 67 (1973).

¶15.    Here, Entergy failed to prove that the evidence sought by the grand jury was irrelevant to the entire scope of the grand jury's investigative authority. The evidence was relevant to a grand jury investigation and had the potential to result in criminal indictments. In such circumstances, the grand jury is acting within its lawful authority as an investigative body for the state, and the evidence adduced by Entergy was insufficient to overcome the substantial presumption that the grand jury was functioning within its authorized prerogatives. When the grand jury seeks information relevant to a legitimate criminal investigation, and that information has the potential to support probable cause to indict for a crime, the grand jury should not be hindered or impeded.

      2.      **The tax assessor's involvement did not improperly influence the grand jury, violate the secrecy rules of grand jury proceedings, or violate the separation of powers doctrine.**

¶16.    A "grand jury's sources of information are widely drawn," and its "investigation may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors." *U.S. v. Calandra*, 414 U.S. 338, 344-45, 94 S. Ct. 613, 618, 38 L. Ed. 2d 561 (1974). The grand jury is the body which decides whether to issue its subpoenas, whether they be subpoenas *duces tecum*, subpoenas *ad testificandum*, or both. Although the prosecuting attorney may bring information to the grand jury asking it to issue a subpoena *duces tecum* based upon information provided to the prosecutor or to the grand jurors by the

9

tax assessor, the grand jury ultimately determines whether to issue that subpoena. Given its broad investigative authority and the fact that its "sources of information are widely drawn," this grand jury was not improperly influenced by the involvement of the tax assessor in this case.

¶17.    Entergy's separation of powers argument also must fail. "While the grand jury is, in a sense, a part of our court system, when exercising its traditional functions it possesses an independence which is unique." *In re April 1956 Term Grand Jury*, 239 F.2d 263, 269 (7th Cir. 1956). In Mississippi, the grand jury's duties and rules emanate from the judicial *and* legislative branches of state government. The judicial branch, *vis-a-vis* the impaneling judge, swears and charges the grand jury, appoints its foreperson, and receives its reports and indictments. The legislative branch, *vis-a-vis* the state legislature, enacts statutes which point the grand jury to specified subject matter into which they should inquire. In addition, the executive branch, *vis-a-vis* a prosecuting attorney, provides legal advice and guidance to the grand jury. It is uniquely independent; its sources of information and investigative authority are extremely broad. The tax assessor's involvement does not violate the separation of powers doctrine.

¶18.    Finally, the tax assessor's involvement does not violate the secrecy rules surrounding grand jury proceedings. No secrecy of the grand jury has been violated, because we do not know specifically what it had been told when it issued the subpoena, and we do not know what it will do when it receives the requested list of names and addresses. If the tax assessor was sworn before the grand jury as a witness, he was placed under an oath of secrecy. If he was not, then it is presumed that he never set foot in the grand jury room while the grand jury

10

was in session. This Court "has not condemned as improper the appearance before a grand jury of officers charged by law with the enforcement of the law." *Case v. State*, 220 So. 2d 289, 290 (Miss. 1969). The mere fact that an outside witness or investigative officer of the state appears before the grand jury in support of a subpoena does not violate the secrecy of the proceedings. The argument is without merit.

### 3. The subpoena does not violate the due process and privacy rights of Entergy's customers in the affected zip codes.

¶19. The subpoena sought names and addresses of Entergy customers. Individuals do not have a reasonable expectation of privacy in their names or addresses which appear in public records, especially in a grand jury proceeding.[4] We note that a "grand jury's subpoena power is not unlimited. It may consider incompetent evidence, but it may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law." *Calandra*, 414 U.S. at 346. "[T]he longstanding principle that the public has a right to every man's evidence, except for those persons protected by a constitutional, commonlaw, or statutory privilege, is particularly applicable to grand jury proceedings." *Dionisio*, 410 U.S. at 9 (internal quotations and citations omitted). Also, "citizens generally are not constitutionally immune from grand jury subpoenas." *Id.* (quoting *Branzburg v. Hayes*, 408 U.S. 665, 682, 92 S. Ct. 1646, 1656, 33 L. Ed. 2d 626 (1972). The list of names and addresses requested in the subpoena at issue is not protected by a constitutional, statutory, or common law privilege. The public has the right to know whether its members are paying their fair share in taxes, and

---

[4]"[A] witness has no right of privacy before the grand jury. Absent some recognized privilege of confidentiality, every man owes his testimony." *Calandra*, 414 U.S. at 353.

11

Entergy has not shown any reason why it or its customers, or their names and addresses, are immune from this grand jury subpoena. Entergy's argument is without merit.

### 4. The subpoena is not an improper, arbitrary fishing expedition.

¶20. Entergy argued that this subpoena for the names and addresses of approximately 20,000 residential customers is an unlawful "fishing expedition" which lacks any individualized suspicion of fraudulent conduct by any of Entergy's customers. In essence, Entergy contends that there must be a preexisting suspicion to warrant a grand jury's investigation of a potential crime, and that baseless and broad investigations at the behest of the grand jury which necessarily will involve the accumulation of evidence from thousands of innocent persons is an abuse of the process and purpose of grand juries. However, this Court has approved other broad investigations which were lacking in individual suspicion but instead depended upon the broad public policy function of ensuring that laws and regulations are followed by the public. An apt analogy would be a police roadblock which stops all vehicles to determine whether vehicle operators are properly licensed. No individualized suspicion is involved; but this Court has held that "a roadblock which stops *every* vehicle passing through the roadblock was not random and served the government's interest in making sure the people on the State's roads are properly licensed." *McLendon v. State*, 945 So. 2d 372, 381 (¶ 8) (Miss. 2006) (internal quotation omitted) (emphasis added). A subpoena for the records of *all* of the residents of two zip codes also is not random in the same way as a comprehensive roadblock is not random. The State has an interest in ensuring that its constituents are paying their taxes properly. The most significant function of a grand jury is to determine whether there is sufficient probable cause to indict for criminal conduct.

12

As such, it is abundantly empowered to seek evidence which will support the probable cause necessary for indictments.

¶21.    The United States Supreme Court has made clear that grand juries may seek evidence even when they do not have a specific individual or crime to investigate. In describing the powers of a grand jury, the Supreme Court forcefully stated:

> It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, *the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning.* **Hendricks v. United States**, 223 U.S. 178, 184, 32 S. Ct. 313, 56 L. Ed. 394 (1912).

**Blair v. U.S.**, 250 U.S. 273, 282, 39 S. Ct. 468, 63 L. Ed. 979 (1919) (emphasis added). In other words, a grand jury "does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." **United States v. Morton Salt Co.**, 338 U.S. 632, 642-43, 70 S. Ct. 357, 364, 94 L. Ed. 401 (1950); *see also* **Dionisio**, 410 U.S. at 15-16 ("[A] sufficient basis for an indictment may only emerge at the end of the investigation when all the evidence has been received."). Other courts of this nation have come to similar conclusions.

> The power of the grand jury extends to the broadest kind of an inquisitorial proceeding, and it may, before a bill of indictment is framed, investigate at the instance of the court, or the district attorney, or at their own instance, a suspected or alleged crime, and determine whether it has been committed, and, if so, who committed it. The grand jury has jurisdiction to proceed under its inquisitorial powers without any specific charge against a particular person or corporation being before it. . . .

13

*United States v. Philadelphia & R.R. Co.*, 225 F. 301, 306-07 (E.D. Penn. 1915). *See also United States v. Williams*, 552 F.2d 226, 230 (8th Cir.) ("[T]he mere possibility that violations of federal law have occurred is sufficient authority for a grand jury investigation.") (quoting *United States v. Sisack*, 527 F.2d 917, 920 (9th Cir. 1976)).

¶22.   Additionally, the type of information requested in the subpoena was not overly burdensome or unreasonable for Entergy to produce. Entergy sells electric power in many Mississippi counties, and the subpoena ordered the production of limited information for two zip codes in one county. Entergy has not shown that producing an electronic copy of the list of its residential customers in the two zip codes would be unreasonably burdensome, or that the request is overly broad, especially in light of the relative ease with which this type of data can be retrieved in our modern, computer-driven era.

¶23.   The grand jury here sought to determine whether there were persons in two zip codes of Madison County who were committing homestead exemption fraud with respect their *ad valorem* taxes. No official or grand juror specified the identity of any person or entity suspected of defrauding the government, but the tax collector did assert that similar efforts with water-billing information from the Madison County cities of Ridgeland and Madison had aided the tax assessor in recovering more than $150,000 of unpaid taxes. Thus, it was known that homestead exemption tax fraud had occurred in Madison County, and logically could occur again. The possibility that a state law was being violated gave the grand jury ample authority to investigate and renders the subpoena nonarbitrary. We cannot look within the grand jury chamber to question whether the argument and evidence presented to the

14

grand jurors was sufficient to provoke the subpoena that the grand jury caused to be issued.[5]

The lawfully constituted grand jury requested information that could assist it in determining whether crimes had been committed so it could consider the return of true bills of indictment against offenders. In so doing, it was acting within its scope and authority as an *ex parte* investigative body. It matters not that there was no particularized suspicion of individuals, because, as noted by the United States Supreme Court, the "identity of the offender" is normally developed "at the conclusion of the grand jury's labors, not at the beginning." **Blair**, 250 U.S. at 282. Further, the potential for misuse of the information does not overcome the presumption that the grand jury was acting within its authority where, as here, it was investigating activity that is criminally punishable in the courts of this state.

## CONCLUSION

¶24.   The motion to quash was properly denied. The grand jury requested information which potentially was relevant to a criminal investigation, and Entergy failed to adduce sufficient evidence to show that the subpoena *duces tecum* was being used to acquire information for an unauthorized civil purpose. Although there existed a possibility, perhaps a strong one, that the evidence thus acquired might be used for a collateral purpose, the fact that the subject matter of the subpoena carried with it the potential for ferreting out criminal activity for which the grand jury could have returned indictments ends the discussion. The

---

[5]Subpoenas, unlike search warrants and arrest warrants, do not have to be supported by probable cause. *See **Matter of Grand Jury Subpoenas for Locals 17, 135, 257 and 608 of the United Brotherhood of Carpenters and Joiners of Am., AFL-CIO***, 528 N.E. 2d 1195, 1200 (N.Y. 1988).

15

grand jury was acting within its legitimate scope, purpose, and authority. Accordingly, we affirm the Madison County Circuit Court's denial of Entergy's Motion to Quash.

¶25.    **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**