■ ALBANY SAVINGS BANK, F.S.B., Respondent, v ALL ADVANTAGES LIMOUSINE SERVICE, INC., et al., Defendants, and BRIAN BODDIE, Appellant.—Mikoll, J. Appeal from an order of the Supreme Court (Doran, J.), entered September 2, 1988 in Albany County, which, *inter alia,* granted plaintiff's motion to confirm an order of attachment.

Defendant All Advantages Limousine Service, Inc. (hereinafter All Advantages), located in the Town of Newburgh, Orange County, entered into a Mastercard/Visa merchant agreement with plaintiff on April 2, 1986 whereby plaintiff would process credit card slips transacted by All Advantages. Defen-

dant Brian Boddie, a principal of Lectra, Inc., had entered into a similar arrangement between Lectra and Intercounty Savings Bank (hereinafter Intercounty) by which Lectra would forward its telephone credit card orders to Intercounty for processing. Boddie was engaged in the business of selling travel packages, via telephone marketing, through Lectra. Defendant John Spadafora was the president of All Advantages.

On August 31, 1987, Intercounty notified Boddie that it would no longer accept Lectra's charge slips for processing. On that date, Boddie reportedly stated that he currently had $70,000 in additional sales in his possession ready for processing and that Intercounty's action would require that he seek bank processing elsewhere. On or about September 2, 1987, All Advantages began processing Lectra's charge slips obtained in the telephone marketing of travel packages through its account with plaintiff. Boddie admits that he participated in the processing of charge slips by All Advantages and was paid a total of $11,300 (according to Boddie) or $19,311 (according to Spadafora) for his work between September 2, 1987 and September 15, 1987 during which time 389 sales slips totaling $152,760.55 were submitted by All Advantages to plaintiff for processing.

Plaintiff terminated the All Advantages merchant account on September 15, 1987, asserting that All Advantages failed to obtain proper authorization from customers before completing a number of credit sales, as required by the merchant agreement with plaintiff. About this time Intercounty froze Boddie's Lectra bank assets as well as his personal assets to satisfy charge-backs resulting from some of the credit charges Boddie had processed through Intercounty under Lectra. On October 15, 1987, Boddie and Spadafora had a meeting with officers of plaintiff at which they discussed concerns plaintiff had with the telemarketing firms All Advantages dealt with, and with the increasing number of charge-backs from its marketing sales. At this meeting Boddie allegedly represented himself as the sales manager of All Advantages.

On December 18, 1987, plaintiff procured an ex parte order of attachment on Boddie's real property and personal bank accounts located in the State. The application for this order was based on a belief that Boddie intended to relocate to Florida and avoid subjecting a new home he was building there to attachment for debts or claims arising from his business dealings with Lectra or All Advantages. Plaintiff also served a notice of motion seeking an order confirming the

attachment order. Subsequently, plaintiff commenced this action alleging, *inter alia,* that Boddie, Spadafora and All Advantages had conspired to defraud and had defrauded plaintiff by presenting unauthorized charge slips to plaintiff. Boddie cross-moved on February 5, 1988 for an order vacating the order of attachment and dismissing the complaint against him. Supreme Court granted plaintiff's motion to confirm the order of attachment. In its decision, the court noted that, as of February 23, 1988, plaintiff had received 259 charge-backs of the 389 telephone credit sales submitted by All Advantages, amounting to over $100,000. The court then went on to hold that there were both grounds for attaching Boddie's real property and bank accounts and a likelihood of success on the merits in plaintiff's litigation against Boddie. This appeal by Boddie ensued.

Plaintiff's initial contention that the appeal is moot because the lien attachment on Boddie's property was extinguished as a result of the foreclosure of Boddie's real property and the exhaustion of his bank accounts in satisfying Lectra's charge-backs must be rejected. CPLR 6212 (e) provides in pertinent part that a: "plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if * * * it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property." *(See also,* CPLR 6212 [b]; *Provisional Protective Comm. v Williams,* 121 AD2d 271, 272; 7A Weinstein-Korn-Miller, NY Civ Prac ¶ 6212.12.) Consequently, should the attachment order be vacated as improperly granted, Boddie would have the right to recover any damages sustained by reason of the attachment. The outcome of this appeal is therefore not moot *(see, Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 [People],* 72 NY2d 307, 311).

Turning to the merits, there should be an affirmance. Plaintiff correctly argues that the affidavit of Spadafora submitted in support of plaintiff's motion which stated that Boddie informed Spadafora "that he was planning to permanently relocate to Florida * * * as soon as possible, explaining that creditors could not attach his house in Florida for debts or claims arising from his business activities", sets forth a proper ground for attachment pursuant to CPLR 6201. "Statements made by the defendant of his intent to place his property beyond the reach of plaintiff" (29 NY Jur 2d, Creditors' Rights and Remedies, § 76, at 447) along with "the timing of [a] defendant['s] actions [which raise] an inference that [the de-

fendant] intended to frustrate enforcement of a judgment" *(City of New York v Citisource, Inc.,* 679 F Supp 393, 397) provide sufficient evidence for a court to confirm an order of attachment.

Boddie contends that plaintiff did not meet its burden of establishing that it would probably succeed on the merits because the complaint's two causes of action were insufficiently proven, and Supreme Court improperly relied on a cause of action (intentional interference with a contract) never raised by plaintiff. This contention is not well founded. An attachment will issue as long as, *inter alia,* "the affidavits demonstrate a substantial probability that a cause of action exists and that success on the merits is probable" (7A Weinstein-Korn-Miller, NY Civ Prac ¶ 6212.02). A cause of action for intentional interference with a contract is established by the following elements: (1) existence of a valid contract, (2) a defendant's knowledge thereof, (3) the defendant's intentional act resulting in breach, and (4) damages *(see, Guard-Life Corp. v Parker Hardware Mfg. Corp.,* 50 NY2d 183, 189-191; *Israel v Wood Dolson Co.,* 1 NY2d 116, 120). Specifically, Boddie argues, plaintiff must show that Boddie was aware of the specific provision of the All Advantages/plaintiff merchant agreement allegedly breached (requirement for proper authorization before presenting a credit card sale).

However, here plaintiff's moving papers establish a cause of action for intentional interference with a contract. Boddie's admitted involvement in the processing of sales slips through All Advantages and Lectra indicate his knowledge of the business. The papers submitted demonstrate that Boddie engaged in the processing of charge slips through All Advantages and plaintiff in an effort to obtain money by submitting unauthorized or improperly authorized charge slips. Boddie's knowledge of the proper authorization provision in the merchant agreement may be inferred from the allegations contained in the moving papers. Evidence that, by February 1988, 259 of the 389 charge slips submitted by All Advantages to plaintiff with Boddie's assistance had been charged back to plaintiff is indicative of the probability of success on the merits.

Order affirmed, without costs. Kane, J. P., Mikoll, Yesawich, Jr., Levine and Mercure, JJ., concur.