[921 NYS2d 14]

In the Matter of Sojitz Corporation, Respondent, v Prithvi Information Solutions Ltd., Appellant.

First Department, March 10, 2011

### APPEARANCES OF COUNSEL

*DLA Piper LLP (US)*, New York City (*James P. Duffy IV, Claudia T. Salomon* and *Sonal Patel* of counsel), for appellant.

*Hogan Lovells LLP*, New York City (*Andrew Mark Behrman, Joseph P. Cyr* and *Matthew J. Galvin* of counsel), for respondent.

### OPINION OF THE COURT

RENWICK, J.

In this proceeding, we are asked to determine an issue apparently of first impression in this state, that is, whether a creditor can attach assets in New York, for security purposes, in anticipation of an award that will be rendered in an arbitration proceeding in a foreign country, where there is no connection to New York by way of subject matter or personal jurisdiction. We answer in the affirmative, holding that, pursuant to CPLR 7502 (c), a pre-award attachment in international arbitration is proper; that is, debt owed by an entity domiciled within this state to the party against whom the award is sought may be attached.

Petitioner is a Japanese company with its principal place of business in Tokyo. Respondent is a company organized under the laws of India and has its principal place of business in Hyderabad, India. There is no claim that either party regularly engages in business, or has transacted business in connection with the present case, in New York State.

In November 2007, the parties entered into a contract in Delhi, India, whereby petitioner agreed to provide telecom-

munications equipment produced in China to respondent in India. In return, respondent would make payments into an escrow account located at the Punjab National Bank in India, from which petitioner was to withdraw the funds and deposit them into its account in Japan. The contract also contains choice of law and arbitration clauses that provide that the contract is governed by the laws of England and that any disputes arising "out of or in connection with or in relation to" the contract will be settled by arbitration in Singapore.

Pursuant to the contract, petitioner shipped and delivered equipment to respondent over a five-month period, from January to June 2008. Upon each shipment of goods, petitioner issued invoices along with bills of exchange to respondent. Respondent accepted delivery of all goods without complaint. The total price of the goods invoiced by petitioner was $47,483,106.93. On March 15, 2009, the final payment from respondent became due under the contract.

Petitioner claims that it only received approximately $5.6 million from respondent and that payments intended for the escrow account were diverted by respondent. Allegedly, respondent admitted to petitioner that it wanted to use the money for "other things" because it had "cash flow problems." In addition, petitioner alleges that respondent owes "unbundled" and "delay" interest under the contract that amounts to approximately $1.345 million, as of July 2009. Accordingly, respondent allegedly owes petitioner approximately $48.4 million.

In August 2009, petitioner moved ex parte for an order of attachment against respondent for $40 million. Petitioner alleged that it intended to commence an arbitration in Singapore within 30 days of the order of attachment, but that it would take time to constitute the arbitral tribunal, and respondent might dissipate assets in the meantime. Supreme Court granted an order of attachment to secure the amount of $40 million and ordered petitioner to post a $2 million bond.

Respondent moved to vacate the order of attachment. In support of its motion, it submitted an affidavit from Satish Vuppalapati, its managing director, stating that it did not maintain any offices in New York, was not licensed to do business in New York, and had no property, bank accounts, or employees in New York. Respondent acknowledged soliciting business in New York, but only occasionally. Vuppalapati said that, as of September 4, 2009, respondent had only three or four customers in New York, which together contributed only about 1.4% of respondent's

total annual revenue. He said that respondent did not undertake any business activities in New York in connection with the contract at issue. One of respondent's New York customers, COMSYS, owed $18,480. Petitioner attached that $18,480, which was located in New York.

In September 2009, Supreme Court issued the order appealed herein, which vacated the $40 million attachment, confirmed the $18,480 attachment, reduced the $2 million bond to $900 or 5% of any amount attached, whichever is greater, and permitted petitioner to move to attach additional specific assets if it found any in New York. Relying on CPLR 7502 (c), the court rejected respondent's argument that the court had to have personal jurisdiction over it to issue such an attachment.

In February 2010, in an order denying respondent's motion for a stay of the order pending appeal, the court mandated that the order from which respondent appealed would automatically dissolve 90 days from March 8, 2010, unless certain events occurred, and on June 6, 2010, the order appealed from dissolved in accordance therewith. Petitioner then moved to release its bond because no property of respondent was attached. In August 2010, the court discharged the bond. Respondent now appeals from the order to the extent it granted petitioner the pre-award attachment and reduced the $2 million bond to $900.

■ As a threshold matter, we reject petitioner's argument that the appeal is moot because the order appealed from has been dissolved and the bond has been discharged. Respondent has the right to recover any damages sustained by reason of an improperly granted attachment (*Albany Sav. Bank v All Advantages Limousine Serv.*, 154 AD2d 759, 761 [1989]). Therefore, this appeal is not moot (*Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 72 NY2d 307, 311 [1988], *cert denied* 488 US 966 [1988]).

Despite New York's status as a global commercial and financial center, the authority of New York courts to issue the provisional remedy of attachment in aid of arbitration is a relatively recent phenomenon. In 1982, the Court of Appeals held that New York courts did not have the authority to issue an order of attachment in a case that was subject to arbitration (*Cooper v Ateliers de la Motobecane*, 57 NY2d 408 [1982]). The dispute in *Cooper* concerned a contract between Cooper (and others) and a French corporation that provided for disputes to be resolved by arbitration in Switzerland. The plaintiff obtained ex parte an order of attachment of a debt owed by a New York

corporation to the defendant. The Court noted that "[t]he provisional remedy of attachment is, in part, a device to secure the payment of a money judgment" and that, pursuant to CPLR 6201, "[i]t is available only in an action for damages" (57 NY2d at 413). Accordingly, "attachment would not be available in a proceeding to compel arbitration (see CPLR 7503, subd [a]), as that is not an action seeking a money judgment" (*id.*). The Court also found that the remedy of attachment should not have been granted because it was inconsistent with the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the U.N. Convention), which applied because one of the parties was a French corporation, and which "precludes the courts from acting in any capacity except to order arbitration" (*id.* at 414).

In 1985, the New York Legislature amended article 75 of the CPLR to overrule *Cooper*. Specifically, it added a new subdivision—"(c) Provisional Remedies"—to CPLR 7502. Under this new subdivision, courts were granted the authority to entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitrable controversy, provided "that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." However, CPLR 7502 (c), as interpreted, did not provide the courts with the authority to entertain applications for the provisional remedies of preliminary injunctions and orders of attachment where the situs of the arbitration is outside of New York or in actions governed by the U.N. Convention (*see e.g. Koob v IDS Fin. Servs.*, 213 AD2d 26, 34 [1995]; *Drexel Burnham Lambert v Ruebsamen*, 139 AD2d 323, 329 [1988], *lv denied* 73 NY2d 703 [1988]; *Shah v Eastern Silk Indus.*, 112 AD2d 870, 871 [1985], *affd* 67 NY2d 632 [1986]; *Faberge Intl. v Di Pino*, 109 AD2d 235, 238-239 [1985]). That authority was granted in October 2005, when the Legislature amended CPLR 7502 (c) again, and in doing so granted the courts of New York authority to issue preliminary injunctions and attachments in aid of all arbitrations including those involving foreign parties or in which the arbitration is conducted outside of New York.*

In the instant case, respondent does not argue that petitioner failed to demonstrate, as required by CPLR 7502 (c), that the

---

\* As amended, CPLR 7502 (c) reads in relevant part as follows:
"The supreme court . . . may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitration that is pending or that is to be commenced

arbitration award would otherwise be rendered ineffectual without the provisional relief of attachment, based upon the documentary evidence suggesting that respondent diverted funds from the escrow account without an explanation. Nor does respondent contest that the account seized is a debt owed by a New York domiciliary to respondent. In addition, the situs of the debt for attachment purposes is "the location of the party of whom performance is required by the terms of the contract" (*ABKCO Indus. v Apple Films*, 39 NY2d 670, 675 [1976]). Nevertheless, respondent argues that the court improperly ordered attachment of its property because the court did not have personal jurisdiction over it. We find, to the contrary, that the attachment—strictly for security purposes—was proper.

An analysis of the issue must begin with *Shaffer v Heitner* (433 US 186 [1977]), which subjects in rem and quasi in rem jurisdiction to the same standard of constitutional scrutiny that has been applied to in personam jurisdiction since *International Shoe Co. v Washington* (326 US 310 [1945]). In *International Shoe* the Supreme Court rejected the rigid territorialism of *Pennoyer v Neff* (95 US 714 [1877]) and announced that a state court's exercise of in personam jurisdiction would satisfy the Due Process Clause if the defendant had "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" (326 US at 316 [internal quotation marks and citations omitted]).

*International Shoe* addressed in personam jurisdiction only. For some 30 years thereafter, quasi in rem jurisdiction could still be predicated entirely on the "presence" of the intangible property in the forum state, in keeping with *Pennoyer*. *Shaffer*, however, abandoned that notion. In *Shaffer*, the plaintiff filed a shareholder's derivative action in Delaware against, inter alia, present and former officers of the corporation (nonresidents of Delaware) and attached shares of stock owned by them, giving the Delaware court quasi in rem jurisdiction over the defendants. Recognizing that an assertion of "jurisdiction over a thing" is in fact "jurisdiction over the interests of persons in a thing," *Shaffer* held that, although the location of property could be evaluated as a contact for *International Shoe* purposes, the ultimate question was whether there was jurisdiction over

inside or outside this state, whether or not it is subject to the United Nations convention on the recognition and enforcement of foreign arbitral awards."

the party against whom the plaintiff asserted liability (*id*. at 207 [internal quotation marks and citation omitted] and n 22, 212).

In his analysis for the majority in *Shaffer*, Justice Marshall distinguished two types of quasi in rem actions, as well as the true in rem action (433 US at 199 n 17). In both the true in rem action and one type of quasi in rem action, the plaintiff's claim is directly related to the property that is the subject of the seizure. Justice Marshall noted that where that was the case, "it would be unusual for the State where the property is located not to have jurisdiction" (*id*. at 207). But in the second type of quasi in rem action, where the property is unrelated to the cause of action, jurisdiction depends on defendant having other contacts with the forum that satisfy the standards of *International Shoe* (*Shaffer* at 208-209, 212-213).

The *Shaffer* case, of course, involved an assertion of quasi in rem jurisdiction for purposes of obtaining jurisdiction over the defendants to adjudicate the merits of the case, and not merely for the purpose of securing satisfaction of a future judgment. However, the Court held out the possibility of a "security" exception to the requirement of minimum contacts in quasi in rem jurisdiction, remarking in a dictum that a plaintiff might be entitled, without demonstrating minimum contacts of any kind, to attach property located in one state "as security for a judgment being sought in [another] forum where the litigation can be maintained consistently with *International Shoe*" (433 US at 210).

In reliance on this language, some courts have asserted jurisdiction for prejudgment attachment purposes based on nothing more than the presence within the jurisdiction of the assets to be attached. For example, in *Barclays Bank, S.A. v Tsakos* (543 A2d 802 [DC 1988]), Barclays sought to attach an apartment in Washington, D.C., pending resolution of court proceedings in France and Switzerland over a defaulted $1.4 million loan. Relying on the "security" exception described in *Shaffer*, the District of Columbia Court of Appeals held that the trial court could issue an attachment of the defendants' property even though it had no personal jurisdiction over the defendants. The District of Columbia court was following *Carolina Power & Light Co. v Uranex* (451 F Supp 1044, 1048 [ND Cal 1977]), in which the District Court held:

> "[W]here the facts show that the presence of defendant's property within the state is not merely

> fortuitous, and that the attaching jurisdiction is not an inconvenient arena for defendant to litigate the limited issues arising from the attachment, assumption of limited jurisdiction to issue the attachment pending litigation in another forum would be constitutionally permissible."

We are similarly persuaded that New York's attachment statute does not run afoul of *Shaffer* when it is used for purposes of security rather than to confer in personam jurisdiction. As the *Shaffer* Court recognized, attachment for security pending litigation in a proper out-of-state forum does not raise the same due process concerns as are implicated by attachment for jurisdictional purposes. In seeking attachment pursuant to CPLR 7502 (c), a petitioner is in no way seeking to compel a respondent to litigate in an improper forum to save her property; the petitioner merely seeks to have the property attached for future execution in the event a recovery is ordered by the out-of-state forum.

To the extent that security attachments raise the concerns of the *Shaffer* Court, we see nothing fundamentally unfair about an attachment for security pending arbitration in a proper forum. In fact, CPLR 7502 (c) provides several substantive and procedural safeguards intended to permit attachment consistent with due process. For instance, as noted above, to demonstrate entitlement to a provisional remedy in aid of arbitration, the petitioner must show that any award issued by the arbitrator would otherwise be rendered ineffectual if the relief was not granted (*see e.g. Matter of H.I.G. Capital Mgt. v Ligator*, 233 AD2d 270 [1996]). In addition, the statute provides that if the arbitration is not commenced within 30 days after the attachment is granted, the order "shall expire and be null and void." Since *Shaffer* was intended to prevent attachment where attachment would violate due process, it should not hamper attachments that are issued consistent with due process.

Significantly, the Supreme Court has approved attachments used to execute foreign judgments against judgment debtors who have no contacts with the forum other than ownership of property there that can be used to satisfy the foreign judgments (*see North Ga. Finishing, Inc. v Di-Chem, Inc.*, 419 US 601 [1975]; *Mitchell v W. T. Grant Co.*, 416 US 600 [1974]; *Fuentes v Shevin*, 407 US 67 [1972]). If that is so, we perceive no reason why local assets belonging to a party should not also be attached prejudgment to secure payment of an eventual judgment

against that party, provided that the party seeking the attachment demonstrates its entitlement to the provisional relief.

Accordingly, the order of Supreme Court, New York County (James A. Yates, J.), entered October 5, 2009, which, insofar as appealed from, granted petitioner a pre-award attachment in aid of arbitration and reduced the amount of the bond that petitioner was required to post pursuant to an order entered August 13, 2009, should be affirmed, without costs.

MAZZARELLI, J.P., FRIEDMAN, McGUIRE and RICHTER, JJ., concur.

Order, Supreme Court, New York County, entered October 5, 2009, affirmed, without costs.